249 So.2d 877

**Gilbert Dwight CAMPBELL**

**v.**

**STATE.**

**1 Div. 49.**

Court of Criminal Appeals of Alabama.

June 29, 1971.

C. Wayne Loudermilch and Charles R. Butler, Jr., Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Robert E. Morrow, Asst. Atty. Gen., for the State.

**58**

PER CURIAM.

This is an appeal from a conviction by the Mobile County Circuit Court of robbery with punishment fixed at ten years imprisonment.

An outline of the testimony introduced by the State shows that on the night of February 13, 1969, the filling station operated by J. T. Levens in Mobile was entered by a colored male who at gun point forced Levens to give him an amount of cash on hand; that there was present besides Levens a young man, Paul Osborn, an employee at the station; that Levens was struck twice by the robber who remained in the station approximately three minutes before leaving with the cash; and that neither Levens nor his employee knew or recognized the robber.

Levens and his employee both attended a line-up where appellant was not represented by an attorney and recognized the appellant as the guilty person, but on voir dire examination conducted outside of the presence of the jury, the court suppressed all testimony of the employee pertaining to the lineup.

On further examination, the court suppressed the testimony of the employee with regard to the in-court identification of appellant and suppressed all testimony of Levens pertaining to the police lineup but admitted as to his in-court identification of appellant as the man who held up and robbed him at the filling station.

The defendant testified and denied any guilt whatever, or knowledge of the occurrence.

The adverse rulings of the trial court with regard to the in-court identification of appellant by witness Levens were properly reserved by timely objections by appellant.

Appellant argues in brief that the court was in error in admitting into evidence the in-court identification of appellant by witness Levens because it was "not free from the taint of the identification made at the lineup," where appellant was not represented by counsel, and was not based on "an independent origin of identification." (That is, facts independent of the lineup and free from its influence.) He cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, which hold that an in-court identification of the accused by a witness who has viewed the accused in a lineup before trial, without counsel, is not admissible unless an independent origin of the identification is established.

During the examination of the prosecuting witness Levens on voir dire, out of the presence of the jury, the following occurred:

"Q. Mr. Levens, you say someone came to your service station as you were counting the money?

"A. Yes sir.

"Q. Who was that?

"A. That boy there.

"MR. BUTLER: We object, Your Honor, improper predicate.

"THE COURT: Sustained.

"Q. When you went to the lineup did you see this boy at the lineup?

"A. Yes sir.

"Q. Was this after you had been robbed?

"A. It was.

"Q. Can you identify this man, seated at the end of the table, the defendant?

"A. I can.

"Q. Can you identify him as being the man that came into your service station that night?

"A. Yes sir. (Answer and objection and motion made at same time)

"MR. BUTLER: I object, Your Honor, and move to exclude the answer—

"THE COURT: I sustain the objection and grant the motion.

"Q. Is your identification of him today, seeing him here in the courtroom today, based in any way on your having seen him at the lineup?

"A. Yes, I saw him at the lineup.

"Q. Listen very carefully to my question. Is your identification of him today, seated here in Court, based in any way on having seen him at the lineup?

"A. If I get the question right now, you mean do I remember his face as the same?

"Q. I'm asking you whether or not you are basing your identification of him today on something that you saw at the lineup?

"MR. BUTLER: Your Honor, I'm going to object to that question now, it calls for a conclusion, without any proper predicate having been laid for an answer.

"THE COURT: Overruled.

"A. Other than his face—I just remember his face.

"Q. Did you understand my question, Mr. Levens?

"A. Well, I don't guess I did, if I'm not answering it right.

"Q. I know you are telling me that you remember him, but what I'm asking you is, do you remember him because of the lineup,—do you remember him because you saw him out there at the lineup in Prichard?

"A. Well, yes,—that's one way that I remember him—I know I did see him there.

"Q. Can you tell us whether or not you can identify this man as the man that came into your service station?

"A. He is.

"Q. Can you identify him in Court today as that man, without any reference in your own mind as having gone to a lineup?

"A. I do. (Answer and objection made at same time.)

"MR. BUTLER: I object, Your Honor, —he has no predicate laid for an in-court identification without reference to the illegal lineup.

"THE COURT: Sustained.

"Q. Were you robbed out there—did someone take something from you out there at your station,—in money that you had?

"A. You mean the night that I was robbed?

"Q. Yes?

"A. Yes, he got the money.

"Q. Did you describe that person to the police?

"A. Well, in a way,—just as it is,—I can see the boy now and I know he was the same boy,—same man.

"Q. Did you tell the police what he looked like?

"A. As near as I could. I believe I was some mistaken in his age and probably would be now. I judge he would be 19 or 20.

"Q. How big did you tell him he was?

"A. I believe I told the Judge, or police in other words, he weighed right around—

"MR. BUTLER: Your Honor, I'm going to move to exclude the witness's answer,— I think he said 'He believed he told the Judge—', and it is not responsive to the question, of what he told the officer.

"THE COURT: Sustained.

"Q. Did you tell the police officer right after it happened what the man looked like that robbed you?

"A. The best I could, yes.

"Q. Would you tell us what you told him, the best you remember?

"A. The best I remember I described the jacket he was wearing, and the way he held his hand through the jacket,—the way I took it to be, I didn't see the inside of it,— he appeared to me to run his hand through a false pocket, then I give him his weight.

"Q. How much did you say he weighed?

"A. I believe I give him his weight then as between 150 and 160 pounds.

"Q. How about his height?

"A. Well, I don't recall whether I called his height or not, to the police.

"Q. Did you tell him whether he was a tall man or a short man?

"A. I just don't remember whether I did or not at that time.

"Q. How long did you observe this person that robbed you,—how long was he in the station?

"A. Well, I wouldn't say over about 3 minutes.

"Q. Were you looking right at his face?

"A. Oh, yes.

"Q. Now based on the observation in your service station that night, can you tell us whether or not the man who robbed you that night is in the court room today?

"MR. BUTLER: I object, Your Honor, improper predicate.

"THE COURT: Sustained.

"MR. LAWLER: May I have a recess for about 2 or 3 minutes, Judge?

"THE COURT: Yes sir.

"Q. Mr. Levens, if I can recap for you —listen very carefully to my questions now. A person came out there and robbed you that night, is that corect?

"A. Yes sir.

"Q. Did you see that person?

"A. I did.

"Q. And was that person white or colored?

"A. Colored.

"Q. Male or female?

"A. Male.

"Q. Now having looked at that person who robbed you, can you, based on what you saw out there at your station that night when the robbery occurred, based on what you saw then, can you identify that person?'

"A. Yes sir. (Answer and objection made at same time.)

"MR. BUTLER: I object to it, improper predicate.

"THE COURT: Overruled.

"MR. BUTLER: Exception.

"Q. What was your answer.

"A. I can.

"Q. Would you tell us whether or not that person is in the court room today?

"A. That's him.

"MR. LAWLER: That's all."

During the examination of the prosecuting witness Levens on voir dire, in the presence of the jury, the following occurred:

"Q. Did you see this person's face and features?

"A. Yes, I saw his face. I was doing my best to remember his face, naturally.

"Q. Did you give him this money willingly?

"A. No sir. He picked it up off the table after I laid it out.

"Q. Now, can you tell us whether or not that person is in the court room today?

"MR. BUTLER: I object, Your Honor, improper predicate.

"THE COURT: Overruled.

"MR. BUTLER: I except.

"A. Tell you whether he is in Court, or not?

"Q. Yes sir?

"A. Yes sir, that's him over there.

"Q. You are indicating which person?

"A. The colored boy in the blue shirt.

\*   \*   \*   \*   \*   \*

"Q. Mr. Levens, look at the defendant. Are you positive that that's the man that robbed you?

"A. Yes sir.

"Q. Was there anything about his physical features that night that stood out to you, that you remember?

"A. With those protruding lips, I would know them very much, and to my best recollection his hair was a little bit longer then than it is now.

"Q. Anything else significant about him?

"A. No, unless he would talk. You could see his teeth very plain when he would talk. He seemed to be having trouble closing them, or something or other."

Considered as a whole there was some apparent hesitancy in the testimony of Levens and at times it appears that he did not clearly understand some of the questions. However, he testified to an observation of the person for several minutes, remembering his color, approximate height and weight, age, some facial characteristics, and to viewing and recognizing a picture of appellant shown him by police.

■ The question of whether the in-court identification was based on facts and circumstances other than those of the police lineup, and was free from such influence, was for the court to decide from the testimony adduced.

Appellant further contends that where there has been an illegal lineup and the State has offered proof of an independent origin of the in-court identification and where the defendant has moved to suppress the in-court identification, the trial judge must make a finding that such independent source was established. As supportive of this view he cites United States v. Wade, supra, and Gilbert v. California, supra, and Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634.

As stated above, *Wade* and *Gilbert* both require that under the circumstances in the case at bar the court determine that the in-court identification was not influenced or tainted by the illegal lineup before it is admitted into evidence. In making this determination *Wade* sets out various factors to be considered by the court, to-wit:

"\*   \*   \* the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. \*   \*   \*."

In the case at bar the testimony considered by the court encompassed some of these factors.

■ We do not interpret Sims v. Georgia, supra, as requiring the court in the case at bar to make a formal or written finding that the in-court identification was free from the influence of the alleged line-

**62**

up. That the court was so convinced from the testimony was indicated by his rulings on the hearing on the motion to suppress and at the main trial, in accord with our rules or procedure.

In Sims v. Georgia, supra, the Georgia rule of procedure, to-wit:

> "The State having made out a prima facie case that the alleged confession was freely and voluntarily made, it was a question for the jury to determine on conflicting evidence whether the alleged confession was freely and voluntarily made." Downs v. State, 208 Ga. 619, 68 S.E.2d 568.

appears to have influenced to a great extent the decision reached by the Supreme Court of the United States. In Alabama we have no such rule in the admission of confessions (the subject of *Sims*). Nor do we have such rule governing the admission of the evidence in question in the case here or its consideration by the jury.

The facts of the case and procedure of the Georgia courts as shown in *Sims* makes that case inapt as authority in the present case.

In our opinion there was evidence to support the adverse ruling of the court on motion to suppress the evidence and the rulings on objections made to its introduction at the trial were free from error. We are further of the opinion that the record clearly and adequately reflects the informed judgment made by the court on this question.

The motion to exclude the evidence by the appellant was properly overruled.

Since we find no error in the record, the judgment in this cause is due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.