329 So.2d 579

**Jerry SPEARS**

**v.**

**STATE.**

**7 Div. 427.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

Rehearing Denied March 9, 1976.

David A. Rains, and Robert G. Wilson, Fort Payne, for appellant.

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Spears was convicted of robbery and was sentenced to ten years in the penitentiary. He was represented by employed counsel and at arraignment he pleaded not guilty. After sentence he gave notice of appeal and trial counsel represents him on appeal.

The facts concerning the robbery are not in dispute. Appellant did not testify but he offered the testimony of his father and another witness in support of his alibi. At the conclusion of the State's case appellant moved to exclude the State's evidence on the ground the State failed to make out a prima facie case. This motion was overruled and denied.

On April 8, 1975, Mrs. Bertha Crane and her husband lived on Lookout Mountain toward Adamsburg in DeKalb County, Alabama. Her husband Prince Crane was a mentally incompetent veteran of World War II and was drawing compensation for full disability. Mrs. Crane was a victim of cancer at the time of the robbery and could not walk without crutches.

Mrs. Crane testified that she was at home on April 8, 1975, about 5:00 p. m. when her husband was brought home by a man whom she had never seen before. Mr. Crane entered the house first and the other man followed pointing a gun at Mr. Crane's back. He told Mrs. Crane that Mr. Crane promised him taxi fare if he would take him home. Mrs. Crane went to her bedroom to get some change to pay the man for bringing her husband home. The man followed Mrs. Crane and kept the pistol pointed on her. She got her change purse and the man said he did not want that. She offered him a twenty-dollar bill and he told her he wanted all the money. She had six twenty-dollar bills left from her husband's check after buying groceries one time. With the gun still pointed on her the man took the six twenty-dollar bills. He told her he was going to take Mr. Crane with him and if she called the officers, he was going to kill her husband. He told Mrs. Crane that he wanted the jewelry and she told him they did not have any jewelry. He saw a knife in the dish drainer and he made Mr. Crane cut the telephone wires. He then took Mr. Crane and backed out of the house to his car and drove away.

Mrs. Crane's next-door neighbor called the Fort Payne Police Department and reported the robbery. When the officers arrived, Mrs. Crane gave them a description of the man who robbed her. She told the

officers that the robber was about six feet tall and was about twenty-five years of age. That he weighed about 150 to 160 pounds and that he had a long belt buckle with something inscribed on it. She said he had long reddish-looking hair, and wore a hunting hat pulled down to his nose. She stated he was driving a white and black automobile. She told the officers she observed the man in broad daylight for five or six minutes.

The day after the robbery she viewed a lineup of five men and immediately identified appellant as the man who robbed her of $120.00. She made an in-court identification of appellant as the robber and stated that she was not basing her identification on the lineup but on seeing him when he robbed her and on seeing him in the courtroom and that there was no question in her mind that he was the man who robbed her.

Mrs. Crane stated emphatically that she was not picking out appellant because of the lineup but because she got a good look at him at close quarters for five or six minutes when he was at her house in the daylight hours of April 8, 1975. She said there was no question in her mind that Jerry Spears was the one who robbed her.

Jimmy Cunningham, a neighbor of the Cranes, testified that on April 8, 1975, he saw Mr. Crane go by his house riding in the passenger seat of a white and black Chevrolet. He testified on the motion to suppress outside the presence of the jury, as well as before the jury, that in his best judgment Spears was the driver of the white and black car. He stated he was in the yard of his home and was not more than 20 feet from the automobile and he got a good look at the driver.

On cross-examination he stated that the Cranes lived on a dead end street and that he saw the car both coming and leaving by his house. As the car came back Cunningham could see the driver real well because he was closer to the road and the driver was on his side. He said he spoke to the driver but the driver did not speak to him. He said he had a long hard look at Spears when he tried to speak to him. He stated the driver had on a camouflaged hunting hat and had fairly long brown hair. He further testified that when he went down to the Police Department to view the lineup, he was looking around the place and his attention was drawn to a photograph on a bulletin board and that no one had directed his attention to the photograph. He called one of the officers over to the bulletin board and told him that was the photograph of the man who drove the white and black car by his house. This occurred before the lineup where Cunningham identified appellant. Cunningham stated very positively that his identification was based on seeing Spears driving the car to and from Mr. Crane's house and was not based on the lineup.

Mrs. Mattie White, a neighbor of the Spears family and Mr. Claude Spears, appellant's father, testified that on the day of the robbery, the white and black car was parked in front of the Spears' home with a flat tire. Mrs. White testified that she was positive the *right front tire* was flat. Appellant's father was just as positive that the *left rear tire* was flat. Mr. Claude Spears admitted the car belonged to his son. He further testified that on the day of the robbery his son helped him fix a garden for a Mr. Beason on Lookout Mountain. That they got back home late in the afternoon and his son borrowed his mother's car to go to Chattanooga to play pool, and that his white and black Chevrolet stayed at the house all night and was not moved until the following Wednesday.

Mr. Claude Spears turned over to the officers the hunting hat which belonged to his son and it was introduced in evidence as State's Exhibit No. 2 without objection.

On rebuttal Mr. Claude Spears was thoroughly impeached by three officers who testified that the father told them his son

helped him work the garden the day *before* the robbery.

City Detective Wayne Parker was one of the three officers to whom Mr. Claude Spears made the statement that his son helped him work the garden the day before the robbery. He further testified that he knew appellant had a white and black Chevrolet and that around 6:30 p. m., on the day of the robbery, he went by appellant's father's home and that his car was not parked there.

Appellant makes two contentions to the effect that this case is due to be reversed. His first claim is that he was charged with a capital offense and was entitled to a special venire. Secondly, he contends that a pretrial confrontation for the purpose of identification of the accused as the guilty party is unconstitutional and a violation of due process of law if it was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

We will treat these contentions in the order in which they are presented.

■ In *Burt v. State,* 54 Ala.App. 1, 304 So.2d 243, certiorari denied, 293 Ala. 749, 304 So.2d 246, we said:

"Since *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided on June 29, 1972, abolished the death penalty in all the States of the Union, all crimes for which the maximum punishment was death must now be considered non-capital felonies in Alabama. *Jones v. State,* 50 Ala.App. 62, 276 So.2d 647.

"Appellant further objected to being forced to strike from a *list of twenty-five (25) qualified jurors.* Since robbery is a non-capital felony in Alabama today, a defendant charged with robbery is entitled to strike from a qualified list of *not less than 24 jurors* as provided by

Title 30, Section 62, Code of Alabama 1940. *Crowden v. State,* 41 Ala.App. 421, 133 So.2d 678."

The holding in *Burt,* supra, was reaffirmed in *Sheperd v. State,* 57 Ala.App. 35, 325 So.2d 551, decided on October 1, 1975.

Appellant argues that the Supreme Court in *Ex parte Bynum,* 294 Ala. 78, 312 So.2d 52, has overruled these cases. We do not so construe *Bynum.*

In *Sheperd,* supra, a decision rendered since *Ex parte Bynum,* supra, Judge Bookout concurring specially wrote:

"Contrary to the broad language above, it is my opinion that the Alabama Supreme Court in Bynum was addressing itself solely to the question of bail. The purpose for a special venire in 'capital cases' was to give defendant, on trial for his life, an additional safeguard not given to those where only their liberty was at stake. At the time Title 30 Sec. 63, Code of Alabama 1940 was enacted, the only distinction between 'capital' and 'non-capital' cases was the possible imposition of the death penalty. Since the imposition of the death penalty has been suspended, there is no rational justification for a special venire in a case formerly classified as 'capital' and one formerly not so classified where the penalties may now be the same."

There can be no doubt that in *Bynum* the Supreme Court was dealing solely with the question of bail and the *Burt* case was not mentioned. On authority of *Burt* and *Sheperd* we hold appellant was not entitled to a special venire.

■ We do not deem it necessary to consider the validity of the lineup procedure in this case since the in-court identifications were based entirely upon independent origins as is so clearly illustrated by the testimony of the victim of the robbery

1. See *Fisher v. State,* 57 Ala.App. ——, 328 So.2d 311, released by this Court on January 20, 1976, where the full Court concurred in the holding that nothing that was said in the *Bynum* case deals with special venires.

and the testimony of Jimmy Cunningham hereinabove set forth.

In *McCay v. State,* 51 Ala.App. 307, 285 So.2d 117, certiorari denied, 291 Ala. 788, 285 So.2d 122, this Court said:

"Hence, the only question with respect to the identification was whether or not the totality of circumstances would require as a matter of law that the defendant go free.

"We do not think that this is a proper case for the application of so drastic a penalty upon the prosecution. Here the defendant was in varying degrees identified by more than one witness. Some were able to give reasonably good details, others were not. McCay's alibi testimony was quite threadbare."

In *Thomas v. State,* 50 Ala.App. 227, 278 So.2d 230, this Court held:

"The line-up was not tainted and the circumstances do not show an unfairly constituted line-up, nor was it shown to have been conducted in such an unnecessarily suggestive manner as to be conducive to irreparable mistaken identification. Even if the line-up were to be thought to be violative of due process, the in-court identification need not be rejected if it is shown to have a source independent of the line-up. We are of the opinion that there was sufficient evidence before the trial court, some already alluded to, to show that the in-court identification by the rape victim had an independent origin, hence, fulfilling the legal requirements."

In *Hannon v. State,* 48 Ala.App. 613, 266 So.2d 825, this Court said:

"We hold that the in-court identification was not tainted by the lineup. This is a clear case on 'independent source.' She knew him because she 'eye-balled' him for five minutes during the robbery. *Robinson v. State,* 45 Ala.App. 236, 228 So.2d 850; *Grace v. State,* 44 Ala.App. 682, 220 So.2d 259; *State v. Allen,* 251 La. 237, 203 So.2d 705."

In *Campbell v. State,* 47 Ala.App. 57, 249 So.2d 877, this Court held that whether the in-court identification was based on facts other than those of the police lineup, and was free from influence, was for the Court to decide from the testimony adduced. In this case the trial court held that the in-court identifications were free from taint and were based on independent sources.

We have carefully examined the record and have found no error that merits disturbing the judgment of the conviction, and the case is due to be affirmed.

AFFIRMED.

All the Judges concur.