TYSON, Judge.
The indictment charged the appellant with the robbery of cash and checks of a combined value of $2,585.00, the property of Bolton and Goins Grocery, from the person of Elsie Bolton. The jury found the appellant guilty as charged and fixed punishment at ten years imprisonment. The trial court then sentenced the appellant in accordance with the verdict.
The appellant presented no evidence in his behalf at trial. The pertinent facts are set out in the brief of the State as follows:
“On April 26, 1974, at 5:40 a. m. two individuals robbed Mrs. Elsie Bolton, the operator of the Bolton and Goins Grocery, which is located in the Frankfort Community, Franklin County, Alabama. The robbers were masked and gloved; one was armed with a rifle. The robbery was perpetrated with particular brutality. Mrs. Bolton’s husband was manhandled out of a chair and onto the floor. The perpetrators seemed familiar with the premises and knew exactly where the money was *737 kept in a chest of drawers in a private part of the store.[1] At one point Mrs.
Bolton procured a firearm. Seeing this, one of the perpetrators cried out. From their voices the two perpetrators were identified as a man and a woman. Shooting then broke out with the male perpetrator being wounded in the hand, and Mrs. Bolton being wounded in the arm. The perpetrators left the store in a green Pontiac with loot approximately $3970.00 in cash and checks.
“At 6:08 a. m. Franklin County Sheriff Swanson Hindman received a call to investigate the robbery. He arrived at the store at 6:35 a. m. and, after conversing with Mr. Bolton briefly, proceeded north. At 6:50 a. m. Sheriff Hindman found the get-away car abandoned at an old gravel pit north of the Crooked Oak community in Colbert County. Shortly thereafter, Deputy Jim Ricketts and Investigator Jim Rochester arrived at the gravel pit. The automobile’s hood and grill were still warm indicating recent abandonment. Several items of physical evidence were found at the scene.
“At about the time Jim Rochester arrived at the scene, State Trooper Harold Carson arrived and examined the abandoned vehicle. After leaving the scene Trooper Carson patroled toward the northeast. From the top of Wheeler Mountain Trooper Carson observed an automobile stopped below. As he approached, a young woman came out of the woods and got into the automobile, which then drove away. Trooper Carson stopped the automobile and advised the occupants that he was investigating a robbery and wanted to see their identifications. After noting the identifications of the persons and observing them, Trooper Carson let them go. The two occupants of the automobile were Dianne Michael and the Appellant, Michael Killough.
“Trooper Carson then returned to the place where he had seen Miss Michael come out of the woods. He found some of the -clothes and the masks which were used in the robbery a short distance from the road. Hairs found in one of these masks were identical to Dianne Michael’s.
“Trooper Carson then put out a pick-up order for the Appellant and Miss Michael.
“At the time of his arrest Mr. Killough’s hand was bandaged and the bandage was soaked with blood. Deputy Ricketts changed the bandage and in the process observed a penetration wound in Mr. Kil-lough’s hand.
“Mr. Killough was interviewed three times after his arrest. Each time he was advised of his constitutional rights and voluntarily waived his rights and made voluntary statements.
“The first statement was made to Franklin County Investigator James Rochester on April 26, 1974. On that occasion Mr. Rochester advised Mr. Killough of his Constitutional Rights, which Mr. Killough voluntarily waived. (R. p. 56) Mr. Kil-lough then made a voluntary statement in which he denied the robbery but admitted being in the area at the time of the robbery. (R. pp. 55-62)
“Mr. Killough’s second statement was made to Dexter Haney of the A.B.I. Division of the Department of Public Safety on April 28, 1974. Incident to this interview Mr. Killough was again advised of his Constitutional Rights and again waived them. (R. pp. 96-97) On this occasion Mr. Killough again denied participation in the robbery but stated that he had been present when Dianne Michael had hidden in two places the loot taken in the robbery. A subsequent examination of the places described by Mr. Kil-lough produced the loot. (R. pp. 95-98)
“Finally, on April 29, 1974, Mr. Killough admitted his participation in the robbery and told Detective Haney exactly how the *738 robbery ‘went down.’ Again Mr. Killough was advised of his Constitutional rights and voluntarily waived them. (R. pp. 98-99) Then Mr. Killough voluntarily made a statement to Detective Haney. In Haney’s words:
“ ‘A He [Mr. Killough] said on the night before the Robbery that he and Dianne Michael went to a place and got a GTO Pontiac that Dianne knew where it was for the purpose of using in the Robbery, that he was working at the Little Bear Creek Dam and he had to go to work at 11:00 o’clock and they went to this place in this Chrysler or in the Chrysler he was driving and Dianne was driving the Chrysler and he got the Pontiac and they drove back to near Bolton’s Store and he went on to work in the Chrysler and Dianne stayed in the Pontiac until he got off work the next morning and they got back up there and then they left the Chrysler where she had spent the night in the Pontiac and went to Bolton’s Store and committed the Robbery and then went back to where the Chrysler was and left the Pontiac and got in the Chrysler and left. He said1 the reason they pulled this Robbery was to get money to hire a lawyer for Dianne on a Drug Charge that she had in Lauder-dale County.
***** *
‘“[H]e [Mr. Killough] said that he shot Mrs. Bolton, but he said that if he had wanted to have killed her, he sure could have because he was an expert shot with a pistol and he said he had no intention of killing her. I asked him about the guns and he said he wouldn’t tell me where the guns were, said they were gone, they would never be found.’ (R. p. 101)
(R. pp. 97-101)”
I
The only point argued on appeal in this cause is that the provisions of Title 30, § 63, Code of Alabama 1940, were not complied with inasmuch as the appellant was not served with a copy of a special venire at least one day before trial, citing McCaghren v. State, 292 Ala. 378, 294 So.2d 766. The appellant also calls our attention to the recent opinion of the Alabama Supreme Court in Ex parte Bynum v. State, 294 Ala. 78, 312 So.2d 52.
This Court in Fisher v. State, (1976), 57 Ala.App. 310, 328 So.2d 311, cert. denied March 5, 1976, speaking through Judge Bookout stated the following in dealing with this problem as posed by the Bynum, supra, opinion:
“. . . There the Court held that ‘capital offenses’ still exist in Alabama stating, ‘. . . The only effect of Furman [Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346] was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment.’
“Contrary to the broad language employed by the Supreme Court in Bynum, we are of the opinion that the Court was addressing itself solely to the question of bail. The purpose for a special venire in ‘capital cases’ was to give a defendant, on trial for his life, an additional safeguard not given to those where only their liberty was at stake. At the time Act No. 532, supra, and Title 30, § 63, Code of Alabama 1940, were enacted, the only distinction between ‘capital’ and ‘non-capital’ cases was the possible imposition of the death penalty. Since the imposition of the death penalty has been suspended, there is no rational justification for a special venire in a case formerly classified as ‘capital’ where the maximum punishment is now the same as in a ‘non-capital’ case.
“Should the legislature ever enact a death penalty statute which meets all the constitutional tests for validity, then such *739 special venire statutes would again become applicable, in our opinion. We do not believe the Alabama Supreme Court intended that its reasoning in the Bynum decision should be extended to require a special venire in cases where the death penalty cannot be imposed.”
We have carefully examined this record as required by law and find no error therein. The judgment is due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.

“1- It was proven that Mr. Killough had been in the store previously and had been present when money was taken from the chest of drawers to cash his checks.