LEIGH M. CLARK, Retired Circuit Judge.
This case has been before us on appeal once before. St. John v. State, 54 Ala.App. 672, 312 So.2d 77 (1975). It was therein held that the record was not filed in this Court on time, and an order was entered dismissing the appeal.
On September 7, 1977, defendant herein obtained an order of the United States District Court for the Northern District of Alabama, St. John v. Alabama, (No.Dist.Ala., CA-77-A-0928-M), granting her petition for habeas corpus, “subject to the right of the State of Alabama to reinstate the *814 appeal of petitioner and conduct an appellate review on the merits of said conviction, or in the alternative, to grant petitioner a new trial . . . On December 5, 1977, on motion of the State of Alabama, we reinstated the appeal,[1] and the case on appeal was submitted on briefs on February 6, 1978.
Defendant was convicted of murder in the first degree of Raymond St. John, defendant’s father-in-law, and sentenced to imprisonment for life.
The evidence shows conclusively that on the afternoon of November 24, 1972, while defendant and Raymond St. John and others were in or about the yard of a trailer in which defendant and her husband were living, or had lived in the then recent past, defendant shot Raymond St. John with a pistol. One bullet penetrated his chest at the left nipple, went through his left lung and lodged beneath the skin in the back: another bullet penetrated the victim’s body in the left shoulder area and lodged beneath the skin in the back of that area. The pistol was fired by defendant between four and six times. Mr. St. John was promptly taken to a hospital and died on December 1, 1972.
Others present at the time and place of the shooting included defendant’s husband, Larry St. John; another son of the victim, James Ray St. John; appellant’s mother, Geneva Patterson, and defendant’s mother’s brother, Delbert Smith.
As to the issues raised by the plea of not guilty, which included an asserted defense of self-defense, the evidence for the State was in irreconcilable conflict with the evidence for the defendant.
According to the testimony of Larry St. John and James Ray St. John, Larry and James and their father and others had been working that day on a house that was in the process of being roofed, which to that stage had been recently constructed by Larry and others on the lot on which the trailer was located and approximately ten feet southeast of the trailer. About 3:30 P.M., defendant arrived in an automobile with her mother, Geneva Patterson; the daughter of defendant and Larry, Teretha St. John, a mere child; Elbert Smith, a brother of Geneva Patterson, and Sharon Patterson. While there, defendant talked with Larry and asked him for some money for their daughter, stating that she was sick and needed some orange juice. Larry said he gave her ten dollars. According to the testimony of both Larry and James Ray, defendant observed Mr. Raymond St. John, verbally abused him, calling him, inter alia, a “S.O.B.”: there was a physical encounter between her and Mr. St. John, and defendant’s mother physically pulled defendant away from the deceased at that time, striking defendant with a purse. Defendant picked up a “stick,” which was otherwise identified as an old rake handle, raised it over her head and walked toward Mr. St. John. Larry grabbed the rake handle and words were exchanged between him and defendant.
The two brothers further testified that thereafter defendant went into the trailer and soon came out of it with a pistol in her hand. She started firing in the direction of Mr. Raymond St. John and his two sons. The two sons succeeded in dodging the bullets, but two bullets struck Mr. St. John, dropping him to the ground. According to the two brothers, defendant was advancing toward Mr. St. John as she was firing the gun: they denied that defendant had come out of the trailer with a handbag in one hand and her daughter, Teretha, at the other hand; and that their father ran at her with an open pocket knife; and she then started firing into the ground. Mr. St. John was not abusive of defendant and did not attempt to harm her.
The testimony of defendant and her mother, Geneva Patterson, was diametrically opposed to the testimony of the witnesses for the State as to material circumstances immediately preceding the firing of the pistol by defendant and the wounding of Mr. *815 St. John. Defendant and her mother testified that while defendant and Larry were engaged in a discussion about their marital problems and the needs of defendant and Teretha, their daughter, Raymond St. John came up and cursed defendant for swearing out a warrant for Larry and threatened to strike defendant. She moved over under a pine tree where Raymond St. John hit her in the mouth, knocking her backward and causing her nose and mouth to bleed. Defendant then picked up a stick and when she raised it, her mother snatched it out of her hand. After this, Raymond St. John “patted his pocket” and went to his truck on the premises. Upon his return from the truck Mr. St. John put the blade of a knife to her throat, marking it, and threatened to kill her. With her mother’s help, defendant pulled herself away and ran into the trailer, or mobile home, where she picked up a pistol and placed it in her purse. She came out of the trailer with the purse in one hand and holding her daughter by the other, and started walking toward her mother’s automobile. At that time, Mr. St. John approached her with a knife in his hand and screamed that he was going to kill her. According to defendant and her mother, defendant placed her daughter behind her and pulled the pistol from her purse as she backed away from Mr. St. John: she fired four shots into the ground, and as he continued approaching with a knife, she fired at him. Mr. St. John lunged and fell on defendant, with his knife pressing at her throat still threatening to kill her. Defendant and her mother said that instead of defendant’s advancing on Mr. St. John, defendant was backing away from him and pleading with him not to hurt her.
Delbert Smith testified as a witness for defendant, his niece. Smith substantially corroborated the testimony of defendant and her mother.
During the cross-examination of Larry St. John, defendant’s counsel made an inquiry as to the testimony of Larry at the preliminary hearing of defendant for the shooting of Mr. St. John. He was asked whether he testified on the preliminary hearing that he was divorced. The court sustained the State’s objection to the question. He was further asked whether at the time of the shooting he had in his possession or under his control, a decree of divorce. The court sustained the State’s objection to that question also. The witness had testified to the effect that the divorce proceeding was pending, but that he and defendant were still married at the time of the shooting. According to him, they had not lived together as man and wife for approximately four days prior to the shooting.
We see little reason for any objection to the questions. We also fail to see any value to the defendant for answers to the questions. There was no conflict in any of the evidence on the trial of the case now before us on appeal as to the marital status of defendant and Larry at the time of the difficulty between defendant and her father-in-law. The evidence was clear that at that time they were still married. If Larry had said previously that they were divorced, the statement or testimony would have been inconsistent with his testimony on the trial, but the fact that he may have made such statement or given such testimony theretofore was not material to the issues before the court and jury on the trial of this case.
The testimony of a witness cannot be impeached on an immaterial matter, Morris v. Kaiser, 292 Ala. 650, 299 So.2d 252 (1974). That a witness has made a conflicting statement to that of his testimony in a case is not material, if the fact that he made the contradictory statement is not admissible for any other purpose in the case than to show the contradiction. Gamble, McElroy’s Alabama Evidence, § 156.01(5) (1977).
Where there is no conflict in the evidence as to a particular matter, where the testimony of a particular witness is in complete accord with that of all the other witnesses in the case as to the matter, and where such testimony is in conformity with the position taken by a party seeking to impeach the witness, the fact that he has made a contradictory statement theretofore *816 is wholly immaterial to the issues being tried. Jay v. Sears, Roebuck & Co., Ala.Civ.App., 340 So.2d 456 (1976).
In some questions asked Larry St. John on cross-examination, it appears that defendant’s counsel was attempting to show bias on the part of the witness against defendant. We agree with appellant that great latitude is to be allowed a party in an effort to show bias of an important witness as to contested issues in a case. Wells v. State, 292 Ala. 256, 292 So.2d 471 (1973); Wilson v. Slate, 195 Ala. 675, 71 So. 115 (1916). We find, however, that the record does not show any specific instance in which the court sustained the State’s objection to a definite question asked Larry St. John by defendant’s counsel that would have called for an answer that would tend to show bias. Counsel for defendant seems to think, and counsel for defendant on the trial of the case — different counsel from counsel on appeal — seemed to think, that the court was inclined to not allow him the latitude to which he was entitled in attempting to show bias on the part of the witness; but we must rule as to this point on the rulings of the trial court only, and cannot speculate upon what the trial court would have ruled as to definite questions asked the witness that would purportedly call for answers indicating bias on his part.
Defendant’s counsel also attempted to interrogate Larry as to prior difficulties between defendant and the victim of the homicide. It appears that the court limited defendant’s cross-examination of the witness in this respect to the bare evidence that there had been trouble or difficulties between the two and would not allow defendant to show by the witness whether the victim had ever struck defendant.
At the time questions were asked the witness as to former difficulties between defendant and the deceased, no evidence had been presented to show that defendant was acting in self-defense. In Cole v. State, Ala.Cr.App., 337 So.2d 40, 45 (1976), we held through Harris, J., now P. J.:
“ . . . . It is settled law that evidence of prior difficulties as part of the chain of events leading up to the killing is admissible when offered by the State but when offered by the defendant, such evidence is admissible only if the defendant was not the aggressor in the difficulty resulting in the killing and if the defendant has offered some evidence tending to show self-defense. Foreman v. State, 50 Ala.App. 236, 278 So.2d 238; Byrd v. State, 257 Ala. 100, 57 So.2d 388; Sanders v. State, 242 Ala. 532, 7 So.2d 483.”
In addition, it is to be noted that Larry testified that he never witnessed any former difficulty between defendant and the witness, and that all the information he had on the subject was hearsay. No reversible error can be predicated upon the action of the court as to cross-examination of Larry relative to any possible former difficulties between defendant and the victim of the homicide.
After defendant had presented her case by testimony, tending to show she acted in self-defense, the State recalled Mr. Robert V. Johnson, whose qualifications as a state toxicologist had been established and agreed upon by defendant’s counsel when the witness first testified on call of the State. Mr. Johnson, in rebuttal, testified that a few days before the trial the clothes, which were worn by deceased at the time he was shot, taken off him when he was admitted to the hospital, and then deposited in a plastic bag, were microscopically examined by the witness to determine whether there was any powder residue or powder burn in the area of the holes in the front of the victim’s shirt. He said there were no particles of powder and no powder burns thereon. He said there was bloodstain around the holes. It was established that the bag of clothes had been delivered to James St. John the day of his father’s death, and that he delivered the bag of clothes intact to an investigator for the prosecution a few days before trial, who testified that he promptly thereafter had delivered them at the office of Mr. .Johnson for examination.
Defendant objected to questions as to powder residue or powder burns on the *817 clothes, saying, “There is no proof that these items of clothing are in the same identical condition as they were on the 24th day of November, 1972.” On appeal, appellant says that at the hospital “the clothing could have been washed or otherwise laundered so as to remove any powder which might have been on it.” We think that a showing was made that the clothes were in substantially the same condition at the time of their examination by Mr. Johnson as they were at the time the victim arrived at the hospital and the clothes were taken off him. There is hardly any likelihood of the clothes having been washed while at the hospital. Furthermore, if they had been washed or cleaned they would hardly have been placed again in a plastic bag. Also, the fact that bloodstains appeared on the shirt indicates that it had not been washed or cleaned since the shooting occurred.
The contention of defendant on appeal that she was entitled to the service upon her, “at least one entire day before the day set for the trial,” of “a list of the names of all the jurors drawn for the week in which the trial is set . . . . together with a copy of the indictment,” as provided by Code of Alabama, Tit. 30, § 63 (Recomp.1958) has been definitely determined adversely to defendant. Dean v. State, 54 Ala.App. 270, 307 So.2d 77 (1975); Usrey v. State, 54 Ala.App. 448, 309 So.2d 485, cert. denied, 293 Ala. 776, 309 So.2d 489 (1975); Fisher v. State, 57 Ala.App. 310, 328 So.2d 311, cert. denied, 295 Ala. 401, 328 So.2d 321 (1976); Spears v. State, 57 Ala.App. 525, 329 So.2d 579, cert. denied, 295 Ala. 420, 329 So.2d 582 (1976); Scott v. State, Ala.Cr.App., 331 So.2d 759, cert. denied, Ala., 331 So.2d 762 (1976); Proctor v. State, Ala.Cr.App., 331 So.2d 828 (1976); Killough v. State, Ala.Cr.App., 332 So.2d 736, cert. denied, Ala., 332 So.2d 739 (1976); Mathews v. State, Ala.Cr.App., 337 So.2d 125 (1976). The case now under review was tried in January, 1974. The cases just cited hold that Tit. 30, § 63 of the Code (Recomp. 1958), which is limited in its coverage to capital cases, has no field of application to cases, such as this one, that are no longer considered capital, in the light of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
We do not agree with defendant’s insistence that the failure of the record to show affirmatively that defendant was served with a copy of the indictment as required by Tit. 30, § 63 of the Code, supra, constitutes a violation of her right to “a copy” of the “nature and cause of the accusation” against her as specified in Constitution of Alabama of 1901, Art. 1, § 6. The cases relied upon by defendant, including McCaghren v. State, 292 Ala. 378, 294 So.2d 766 (1974); Green v. State, 160 Ala. 1, 49 So. 676 (1909) and intervening cases all dealt with capital cases that were tried before Furman.
In a non-capital case, Boswell v. State, 290 Ala. 349, 355, 276 So.2d 592, 598 (1973), Justice Faulkner held:
“Appellant urges that he did not receive a copy of the indictment and thus had no notice of the charges against him, in violation of Article 1, § 6, Alabama Constitution. Again, there is nothing in the record on this question. We do note, however, that he waived the reading of the indictment during his arraignment on September 25, 1972. By pleading not guilty, he waived any argument that he had not been furnished with a copy of the indictment. See Howard v. State, 146 Ala. 149, 41 So. 301 (1906).”
We also note that at the arraignment the defendant in this case appeared with her attorney and “waived formal arraignment and pleaded not guilty.”
While Mrs. Essie Daffrin was testifying on the call of the State in rebuttal, an objection was made by defendant’s counsel to some of the questions asked her, on the ground that it was not proper evidence in rebuttal. Mrs. Daffrin lived across the road from the trailer and testified that she was in her yard cleaning some fish when the altercation and shooting occurred. She testified that she heard the loud talking, heard defendant call someone a “S.O.B.,” saw defendant’s mother grab defendant and hit *818 her with her purse, saw defendant pick up a stick and get within reach of Raymond St. John when Larry took the stick away from her. She further testified that she saw defendant then go to the trailer and come out of the trailer with a gun in her hand in front of her. After all of this testimony, defendant for the first time made an objection on the ground that it was not proper evidence in rebuttal. Objection on that ground was made to the specific question, “How far was Mr. Raymond St. John away from Jackie St. John at the time and on the occasion she fired the pistol?” To that question as revised somewhat by State’s counsel, she said “Approximately from here to the lady in the black dress.”, which answer was modified to some extent after another question by State’s counsel, to which she replied, “That is when the gun was fired the first time.” Soon thereafter, she testified that the gun was pointed straight out in front of her, and upon her being asked by State’s counsel, “Was there any pause between the first and second shot?”, there was an objection by defendant’s counsel “because it’s improper rebuttal,” which objection was overruled by the court. The witness answered, “Just a short pause. It was just bang, bang, bang.” She was asked, “What, if anything, was she doing when she was firing the pistol?” To which defendant’s counsel said: “We object to that, because it’s improper.” The court overruled the objection, and the witness answered, “ . . . She was approaching, or in a move toward Mr. St. John.” Immediately thereafter, counsel for defendant stated, “We move to exclude the answer because it’s improper rebuttal.”
We conclude that, although defendant’s counsel did as noted above object to some of the testimony of the witness on the ground that it was improper rebuttal, there was no objection to much of her testimony as to what she saw and heard taking place in the yard where the altercation and shooting occurred. Under these circumstances, and all other circumstances, including the fact that at. the time the State rested its case there was no evidence sufficient to support defendant’s claim of a justifiable homicide under the principle of self-defense, there was no abuse of the discretion vested in the trial court in testimony presented in rebuttal that could have as well been presented by the State in its case in chief. Emerson v. State, 281 Ala. 29, 198 So.2d 613 (1967); Nichols v. State, 276 Ala. 209, 160 So.2d 619 (1964); Posey v. State, Ala.Cr.App., 337 So.2d 113 (1976); Hunter v. State, Ala.Cr.App., 335 So.2d 194, cert. denied, Ala., 335 So.2d 203 (1976); Martin v. State, 51 Ala.App. 405, 286 So.2d 80 (1973); Alexander v. State, 51 Ala.App. 267, 284 So.2d 292 (1973); Haisten v. State, 50 Ala.App. 504, 280 So.2d 209 (1973); Veith v. State, 48 Ala.App. 688, 267 So.2d 480.
J. Kent Ellerd also testified on rebuttal by the State as to matters that could have been shown by him as a witness for the State in the case in chief, but there was an objection to only one of the questions. The question was as to what he saw the three St. Johns do when the witness turned around, after he heard the first shot. His answer was: “I saw them pass out of my view by the trailer there at kind of a hurried walking motion.” The overruling of defendant’s objection to the question was not an abuse of the discretion vested in the trial court.
Mr. Robert V. Johnson, a toxicologist with the State Department of Toxicology, testified in minute detail as to an external and internal post-mortem examination that he made of deceased on the day of his death. He stated the location and condition of each of the holes in decedent’s chest, traced the path of the bullets and recovered them from the back of the body. He said that one bullet passed through both the upper and lower lobes of the lung and made its entry from the chest at the level of the tenth rib. He looked at the “heart, the lungs, the liver, the gall bladder, the spleen, pancreas, the kidneys, the G.I. system, the stomach, the intestines, the urinary bladder, and most of the organs.” In looking at the heart he observed that the man had had a heart attack some time in the past, a rather severe heart attack. He “found scars all through the heart.” He continued during interrogation by the prosecution as follows:
*819 “Q In your opinion, Doctor Johnson, had Mr. St. John recovered from the heart attack that you say had occurred more than a month prior to your examination?
“MR. FAMBROUGH: Just a minute. We want to enter an objection to that question, because of the lack of qualification of this witness.
“THE COURT: Do you have a judgment?
“THE WITNESS: Yes, sir.
“THE COURT: Overruled.
“MR. FAMBROUGH: We except.
[[Image here]]
“A Yes, sir. In my opinion, what I saw was scars so that he sustained an attack. It had healed. This leaves him in a position of having less reserve.
[[Image here]]
“Q Would you describe to the jury what condition you found the lung that had been punctured by the bullet, or the trauma had gone through?
“A Actually, both lungs, as I recall. The other lung was probably more severe, even than the left one, but the lungs had filled with fluid. A condition not unlike pneumonia, one of respiratory failure. Instead of being like (sic)', airy, and spongy, these were very heavy and beefy. On dissection, they oozed a lot of blood, showing they had filled up with blood.
[[Image here]]
“Q Dr. Johnson, based on your examination of this body, Mr. Raymond St. John, and based on your experience and training as a toxicologist, do you have a judgment or an opinion, based on this post-mortem examination, as to the cause of death of this man?
“MR. FAMBROUGH: We object to that, Your Honor.
“THE COURT: Overruled.
“MR. FAMBROUGH: No proper predicate laid.
“THE COURT: Overruled.
“MR. FAMBROUGH: We except.
“THE,COURT: All right.
“A Yes, sir, I do.
“Q What is that, please sir?
“A In my opinion, this subject died as a result of pneumonia and pneumoni-tis, that is a respiratory failure from the bullet hole that entered near the left nipple.”
Mr. Johnson was not a physician. He had a B.S. degree, in chemistry; he was a postgraduate of Ohio State University, and had spent two and one-half years of postgraduate work at the Medical College of the University of Alabama, in biochemistry. He had done postgraduate work at Meade College; he had been a toxicologist for eighteen years and during that time had performed between fifteen hundred and sixteen hundred autopsies.
The position apparently taken by defendant on the trial, as well as the position definitely taken by appellant, was to the effect that, although Mr. Johnson’s qualification as an experienced toxicologist who had performed hundreds of post-mortem examinations was conceded, the fact that he was not a physician prevented him from testifying properly as to the cause of Mr. St. John’s death.
The mere fact that Mr. Johnson was a toxicologist did not qualify him as an expert to testify as to the cause of death. Nevertheless, the witness does not have to be a physician in order to so testify. Judge Tyson, in Cobb v. State, 50 Ala.App. 707, 282 So.2d 327 (1973), summarized the law and authorities on the subject at that time, as to which there has been no change since, as follows:
“ . . .In instances where testimony relating to cause of death is offered, the Alabama cases show that the testimony need not be given by a physician. By way of example, such persons can testify as to cause of death as a funeral director of twenty-five years experience, Cauley v. State, 33 Ala.App. 557, 36 So.2d 347, cert. den. 251 Ala. 163, 36 So.2d 354; a licensed embalmer and undertaker, Le *820 vert v. State, 34 Ala.App. 523, 42 So.2d 525, reversed 252 Ala. 308, 42 So.2d 532, cert. den. 252 Ala. 659, 42 So.2d 534; a chemistry professor, Scott v. State, 141 Ala. 1, 37 So. 357; an employee of the State Toxicologist’s Department who was not a physician, Maund v. State, 254 Ala. 452, 48 So.2d 553; an undertaker and county coroner of many years experience, Williams v. State, 255 Ala. 229, 51 So.2d 250; a mortician, Thomas v. State, 249 Ala. 358, 31 So.2d 71; county coroner with background of two years of college and one year working under the employ of a pathologist, King v. State, supra, or a deputy county coroner with the requisite training and experience, Thigpen v. State, 50 Ala.App. 176, 277 So.2d 922; Willingham v. State, 50 Ala.App. 363, 279 So.2d 534; Snow v. State, 50 Ala.App. 381, 279 So.2d 552.”
The court was not in error in overruling defendant’s objection to questions asked Mr. Johnson. In making this determination, we do not overlook evidence offered by defendant by the testimony of Dr. John E. Hayne, the physician who treated Mr. St. John for his gunshot injuries while in the hospital, who had last seen him alive the day before his death, who expressed the opinion that he died of a heart attack which was “only indirectly” caused by the gunshot wound.
Among the refused charges requested by defendant was the following:
“I charge you, Ladies and Gentlemen of the jury, that unless you find from the evidence, and are satisfied beyond a reasonable doubt and to a moral certainty, that the deceased, Raymond St. John died from the gunshot wounds inflicted on him by the Defendant, then you must acquit the Defendant, Jackie Sue St. John.”
Five other requested charges of a similar import were refused. Appellant urges that refusal of each of the six charges was erroneous.
In each of said charges the words “wounds,” instead of the word “wound” is found. In four of said charges, the words “gun shot wounds” were used. The charges are misleading in the use of the plural instead of the singular. There was no contention, there was no evidence, that the bullet that entered the left shoulder of Mr. St. John caused or contributed to his death. There was no contention, there was no evidence, that any bullet wound was fatal other than that which was caused by the bullet that entered Mr. St. John’s chest at the left nipple and went through his left lung. The indictment charged defendant with killing Mr. St. John “by shooting him with a pistol.” It was not necessary for the State to prove that his death was caused by more than one wound or by more than one gunshot wound.
We think also that defendant had the benefit of everything to which she was entitled, to be found in the charges, by the comprehensive oral charge of the court as to the necessity of proof sufficient to convince the jury beyond a reasonable doubt that defendant killed Mr. St. John by shooting him with a pistol as alleged in the indictment. The court made it clear that defendant should not be convicted unless the shooting caused his death, making it also clear, however, that the shooting did not have to be the sole cause of his death. The court quoted from the oral charge approved in Barron v. State, 29 Ala.App. 137, 193 So. 190 (1940), and correctly applied it to the facts of this case, similar to Barron as to the particular issue of criminal responsibility for a homicide when there is evidence that natural causes and criminal causes have mingled on the deathbed.
We note also that all of the refused charges, except perhaps the charge quoted above, omitted consideration of the evidence as a basis for a reasonable doubt. We held as to a “reasonable doubt” charge in Green v. State, 45 Ala.App. 549, 233 So.2d 243, 245 (1970):
“Charge 15 is bad for leaving out consideration of all the evidence. Smith v. State, 230 Ala. 18, 158 So. 808 (Charge 55).”
*821 There was no error prejudicial to defendant in the court’s refusal of any of the requested charges.
We have searched the record for error prejudicial to defendant and have found none. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by the Honorable Leigh M. Clark, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
HARRIS, P. J., and TYSON, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., dissents with opinion.

. The reinstatement of the appeal is in accord with action of the Supreme Court of Alabama as recited in Cantrell v. State, Ala.Cr.App., 353 So.2d 80, 81 (1977).