312 So.2d 52

**In re Ex parte Hugh Otis BYNUM, Jr., (Petition for Writ of Habeas Corpus).**

**Ex parte Hugh Otis Bynum, Jr.**

**SC 1117.**

Supreme Court of Alabama.

March 6, 1975.

James M. Fullan, Jr., and Roderick Beddow, Jr., Birmingham, for petitioner.

No brief from state.

JONES, Justice.

This is a petition for writ of certiorari to the Court of Criminal Appeals to review and revise the decision of that Court, 54 Ala.App. 729, 312 So.2d 52 which denied a writ of habeas corpus on behalf of petitioner, Hugh Otis Bynum, Jr.

Bynum was arrested December 6, 1974, on a charge of setting off explosives near a dwelling house in violation of Tit. 14, § 123, Alabama Code. The magistrate issuing the warrant failed to set bail. At a preliminary hearing, December 17, 1974, the Jackson County Court bound Bynum over to await the action of the grand jury without bond. A writ of habeas corpus was sought from the Alabama Court of Criminal Appeals which was denied December 20, 1974. An application for rehearing to that Court was also denied. On January 3, 1975, Bynum filed an application to this Court for a writ of certiorari which was denied; however, petition for rehearing was granted on February 3, 1975. Because of the exigencies of the situation, we forthwith issued a writ of certiorari and fixed bail at $100,000. Our written opinion now follows.[1]

Art. 1, § 16, Alabama Constitution, provides:

"That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great . . . ."

See also Tit. 15, § 195, Alabama Code.

It is petitioner's contention that "capital offenses" involve only those crimes punishable by death; and, because Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972), has abrogated the death penalty, there are no longer any capital offenses in Alabama. Therefore, petitioner argues, bail must be granted in his case.

I.

We acknowledge that the United States Supreme Court's decision in *Furman* de-

---

1. The case was argued orally simultaneously with original submission on motion to dismiss and on the merits. Those members of the Court voting on petition for rehearing who were not present for oral argument have heard the arguments on tape.

clared the death penalty unconstitutional as it was then enforced. The threshold issue is whether, under *Furman,* bail must be constitutionally granted prior to conviction in "capital" cases even if "the proof is evident or the presumption great." Although this is a case of first impression in Alabama, other jurisdictions have been faced with this question. The majority of these courts have held that offenses which were classified as capital before *Furman* are still capital, thereby allowing bail to be constitutionally denied for those offenses so classified. People ex rel. Dunbar v. District Court, 500 P.2d 358 (Colo.1972); Wayans v. Wolfe, 30 Conn.Sup. 60, 300 A.2d 44 (1972); State v. Flood, 263 La. 700, 269 So.2d 212 (1972); Blackwell v. Sessums, 284 So.2d 38 (Miss.1973); Hudson v. McAdory, 268 So.2d 916 (Miss.1972); Jones v. Sheriff, Washoe County, 509 P.2d 824 (Nev.1973); In re Kennedy, 512 P.2d 201 (Okl.Cr.1973); Roll v. Larson, 30 Utah 2d 271, 516 P.2d 1392 (1973); State v. Haga, 81 Wash.2d 704, 504 P.2d 787 (1972).

The rationale of these decisions indicates that the gravity of the offense is the distinguishing feature and not the penalty which may be imposed. Following this interpretation, certain crimes for purposes of bail are still classified as capital regardless of whether the death penalty may be invoked.

Other jurisdictions, however, have held that a person charged with a capital offense now has the constitutional right to bail. State v. Johnson, 61 N.J. 351, 294 A.2d 245 (1972); Commonwealth v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972); Edinger v. Metzger, 32 Ohio App.2d 263, 290 N.E.2d 577 (1972); Ex parte Contella, 485 S.W.2d 910 (Tex.Cr.App.1972). See Donaldson v. Sack, 265 So.2d 499 (Fla. 1972).

These courts define "capital offense" as one where the penalty of death may be imposed. Thus the effect of *Furman,* in setting aside the death penalty, has eliminated what was previously designated as a capital offense. In support of this rationale, these courts further reason that, since the purpose of bail is to insure the defendant's attendance at trial, the elimination of the death penalty has lessened his desire to flee.

It is the opinion of this Court that the classification theory followed by the majority of states considering this issue is sound and should be adopted. In reaching this decision, we are aware of prior Alabama cases which interpreted the term "capital offense" to mean offenses for which the death penalty may be imposed. Lee v. State, 31 Ala.App. 91, 13 So.2d 583 (1943); Ex parte McCrary, 22 Ala. 65 (1853). But these opinions were not written in the context of *Furman* (which deals solely with the matter of constitutionally permissible punishment), and their application to the classification of capital offenses for the purposes of bail is not here decisive. The only effect of *Furman* was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment.

As this Court stated in Ex parte McCrary, supra:

"The object of making this class of offences an exception [to the constitutional right of bail] doubtless was, to secure the trial of the accused with more certainty than could be effected by mere personal liabilities. These offenses were of so high a grade, that no personal securities were deemed a sufficient guaranty that the offender would be brought to punishment."

Therefore, in the context here applicable "offenses of so high a grade" still exist in Alabama, and the denial of bail is not violative of Art. 1, § 16, Alabama Constitution.

## II.

The conclusion that "capital offenses" still exist is not alone dispositive of this case. Our Constitution provides that not only must the offense be capital in nature for bail to be denied, but also the proof must be evident or the presumption must be great. The decisions of this Court have stated that this latter requirement means that the evidence must be "clear and strong, leading to a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered . . ." Ex parte McAnally, 53 Ala. 495 (1875), cited in Lee v. State, 281 Ala. 631, 206 So.2d 875 (1968), and Lee v. State, 267 Ala. 665, 104 So.2d 686 (1958).

It is necessary, therefore, for this Court to subjectively review the evidence to determine if the petitioner would probably be convicted of the crime with which he has been charged and be given the maximum sentence allowable therefor. In this regard, two separate issues are presented for our consideration, either of which may be a basis for granting bail: (1) whether the testimony against the petitioner is sufficiently corroborated to be admissible; and (2) if so, whether under the Constitution, as judicially interpreted, the proof is evident or the presumption great that the defendant probably will be convicted and given the maximum punishment allowable.

### A.

According to Billy Ray McCrary, Bynum engaged him to hire a "hit man" to kill four men, including Loy Campbell who was later seriously and permanently injured by an explosion in his automobile near his home. This testimony of McCrary, as a coconspirator, would be inadmissible unless corroborated. Additional testimony was given by Lt. Marvin Bryant, a state trooper, who stated he overheard via electronic eavesdropping another conversation between Bynum, McCrary, and a third party (another state agent), which the State contends amply indicated that Bynum participated with McCrary in the crime for which he was charged. For obvious reasons, we are constrained not to discuss further the details of the evidence. Because of the conclusion which we later reach with respect to the second issue, we will assume, without deciding, that Lt. Bryant's testimony supplies the necessary corroboration of McCrary to render his testimony admissible. Even so, the "proof is evident or presumption great" test is yet to be met.

### B.

Applying that test, from a careful examination of the record, we are not convinced that the quality of proof is sufficient to restrain petitioner of his liberty.

In weighing the testimony (for the limited purpose of bail), we observe that before trial no one can say judicially whether the petitioner is guilty of the crime charged. Nor is it our function to speculate on the State's motive in choosing this particular offense with which to charge the petitioner. Rather, it is our function to review the case in the posture in which it is presented. We now look to that posture as revealed by the record.

The crime charged is based on Tit. 14, § 123, Alabama Code, which, in pertinent parts, provides:

> "Any person who wilfully sets off . . . any . . . explosive in, under or dangerously near to . . . any inhabited dwelling house . . . shall on conviction be punished at the discretion of the jury by death or by imprisonment in the penitentiary for not less than ten years."

Bynum was not charged under Tit. 14, § 38, for assault with intent to murder (a noncapital offense—two to twenty

years); nor was he charged under Tit. 14, § 124, for dynamiting an automobile (a noncapital offense—two to ten years), neither of which is a lesser included offense under Tit. 14, § 123. We look only to the offense charged, an in our opinion the presumption of conviction for this specific crime, *and the imposition of the maximum sentence allowed therefor,* is not so great as to comport with the constitutional exception for the denial of bail.

The judgment of the Court of Criminal Appeals denying petitioner bail is therefore reversed. The prior order entered by this Court directing that petitioner be released from custody upon his furnishing bail in the sum of $100,000 to be approved by the Judge of the Jackson County Court returnable to the Circuit Court of Jackson County in compliance with Tit. 15, § 194, Code of Alabama 1940 (Recomp. 1958), is hereby continued in force, ratified, and affirmed.

Application for rehearing granted: petition for writ of certiorari to the Court of Criminal Appeals granted: petition for writ of habeas corpus granted: and bail fixed at $100,000.

FAULKNER and SHORES, JJ., concur.

HEFLIN, C. J., concurs specially,

MERRILL, BLOODWORTH and MADDOX, JJ., concur in part, dissent in part.

ALMON and EMBRY, JJ., recused themselves.

HEFLIN, Chief Justice (concurring in result):

I agree that the petitioner is entitled to bail, but for a different reason.

The petitioner has been charged with violation of Title 14, Section 123, Alabama Code of 1940, as amended (Recompiled 1958), which subjects to punishment any person "who wilfully sets off or explodes any dynamite or other explosive in, under or dangerously near to \* \* \* any inhabited dwelling house \* \* \*." This statute sets the punishment at death or imprisonment in the penitentiary for not less than ten years, at the discretion of the jury.

Much has been said about the case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The full effects of that historic decision by the United States Supreme Court are yet unknown, but one result that is known is that the petitioner in this case cannot be punished by death under Title 14, Section 123.

Section 16 of the Alabama Constitution of 1901 provides:

"That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great \* \* \*."

Similar provisions have been present in our constitutions since statehood.

Since before the War Between the States there have been statutory provisions by which the legislature to some extent explained this constitutional section. One of these statutory provisions is presently found at Title 15, Section 195, Alabama Code of 1940, as amended (Recompiled 1958), and reads as follows:

"*When bail not allowed.*—A defendant cannot be admitted to bail when he is *charged with an offense which may be punished by death,* if the court or magistrate is of the opinion, on the evidence adduced, *that he is guilty of the offense in the degree punishable capitally* \* \* \*." (Emphasis supplied.)

Title 15, Section 196, Alabama Code of 1940, as amended (Recompiled 1958), is the other statutory provision and it provides:

*"When matter of right.*—In all other cases than those above specified [in Section 195, *supra*], the defendant is, before conviction, entitled to bail as a matter of right."

It is apparent, since the case of Furman v. Georgia, *supra*, that Title 15, Section 195, cannot in its literal wording apply to the petitioner in this case so as to deny him bail. This section applies only to a defendant "charged with an offense which may be punished by death," and since Furman v. Georgia the crime charged cannot be punished by death. With Section 195 inapplicable, consideration should be given to Section 196; that section applies in "all other cases than those above specified [in Section 195]," and under its terms the petitioner would be entitled to bail "as a matter of right."

Section I of Justice Jones' opinion in this case may herein be referred to as the "majority opinion," since that section has the concurrences of five members of this court in addition to Justice Jones. That section contains the following statement:

" * * * The only effect of *Furman* was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment."

Thus, as I understand the majority opinion, it holds that the term "capital offenses" in Section 16 of the Alabama Constitution of 1901, *supra*, does not mean offenses "which may be punished by death," but means, instead, a "classification whereby crimes are categorized as capital for purposes other than punishment." One of these "purposes other than punishment" is obviously the determination of bail or no bail.

For more than a century, the term "capital offenses," as it is used in Section 16 of the Alabama Constitution of 1901, has been considered synonymous with the term "offense[s] which may be punished by death,"

as that term is used in Title 15, Section 195, Alabama Code of 1940, as amended (Recompiled 1958).

I am simply unable to read the phrase "offense which may be punished by death" (Title 15, Section 195, Code) as meaning not an offense which may be punished by death, but, instead, as meaning a "classification whereby crimes are categorized as capital for purposes other than punishment." Yet, the phrase in Title 15, Section 195, must be given that meaning in order to avoid the application of Title 15, Section 196, which would admit the petitioner to bail "as a matter of right." The majority opinion clearly holds that the petitioner is *not* entitled to bail as a matter of right; then the six members of this court who support the opinion part company on the issue of the evidence — three holding that he is entitled to bail, but only because the constitutional evidentiary standard for denial of bail is not met, and the other three holding that the evidentiary standard is met.

After studying the opinions of this court construing the constitutional and statutory provisions discussed above, I am compelled to the conclusion that the constitutional term "capital offenses," appearing in Section 16, and the statutory term "offense[s] which may be punished by death," appearing in Title 15, Section 195, mean the same thing and that the meaning of both is "offenses which may be punished by death."

One of this court's earliest cases construing these provisions was Ex parte McCrary, 22 Ala. 65 (1853). The wording of the constitutional provision in 1853 was virtually identical to that of its present-day counterpart. This court stated:

"The language of the constitution is: 'All persons shall, before conviction, be bailable by sufficient securities, except for capital offences where the proof is evident or the presumption great.' The obvious intention of the framers of the constitution, in denying to the legislature the right to pass any laws impairing the

right of bail, except in capital cases, was, as to these offences, to leave them free to pass such laws as they please. This clause of the bill of rights in the constitution was, many years since, made part of the statute law of the State, and was incorporated in the Penal Code. * * *"

In *McCrary* the statutory provision considered by the court was apparently a legislative enactment of the constitutional provision itself rather than the explanatory statute now appearing as Title 15, Section 195.

In the case of Ex parte McAnally, 53 Ala. 495 (1875), this court considered both the constitutional provision and the explanatory statute. After quoting both the constitution ("except for capital offenses") and the statute ("offense which may be punished by death"), Chief Justice Brickell stated for the court:

" * * * *Under these constitutional and statutory provisions, bail becomes a matter of right, whether before or after indictment found, until conviction is had, in all criminal accusations, unless the offense may be punished capitally.* The inquiry in this respect is not whether the punishment which must follow conviction is necessarily death. * * * With one exception, even when the offense may be punishable with death (R.C. § 3902), it is within the discretion of the jury to impose that punishment, or imprisonment in the penitentiary for life. Hence, it cannot be known, until after conviction, whether death will be the punishment. The question, in legal contemplation, is on an application for bail, therefore, whether the offense is of the character which may be punished capitally." (Emphasis added.)

I cannot suppose that this court in 1875 thought a "capital offense" or an offense which "may be punished capitally" was anything other than an offense which might be punished by death. Nor have I found any case before this present one in which this court entertained that thought.

But let us look further at this court's application of these constitutional and statutory provisions. This court has consistently applied the standard adopted in Ex parte McCrary, 22 Ala. 65 (1853), and refined in Ex parte McAnally, 53 Ala. 495 (1875). In *McCrary* this court stated:

" * * * The question, in contemplation of law, to be tried by the magistrates, on an application for bail, *was not whether the accused must necessarily be punished with death,*—because this they could not know until after the trial,—*but whether he might be so punished, and probably would be under the proof.* * * *" (Emphasis added.)

In Ex parte McAnally this court elaborated on the *McCrary* rule, stating:

" * * * The question, in legal contemplation, is on an application for bail, therefore, whether the offense is of the character which may be punished capitally. Ex parte McCrary, 22 Ala. 65. Ascertaining that to be the character of the offense imputed to the accused, the next inquiry is, is 'the proof evident, or the presumption great,' of the defendant's guilt. If it be not, whatever may be the probable cause to detain him to answer before a tribunal competent finally to adjudge the inquiry, he is entitled not to a discharge, but to bail. If the proof is evident, or the presumption great—if the evidence is clear *and* strong, leading a well guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and *that he would probably be punished capitally if the law is administered,* bail is not a matter of right. * * *" (Emphasis added.)

This same standard was recited in the case of Trammell v. State, 284 Ala. 31, 221 So.2d 390 (1969), in the following words:

"We have long held that three prerequisites are necessary in order to support

a denial of bail in such cases: The evidence must be clear and strong, that it would lead a well-guarded and dispassionate judgment to the conclusion that (1) the offense has been committed; (2) the accused is the guilty agent; and (3) *he would probably be punished capitally if the law is administered. * * *"* (Emphasis added.)

For other cases applying this standard, see Lee v. State, 281 Ala. 631, 206 So.2d 875 (1968), ("that he would probably be punished capitally if the law is administered"); Brakefield v. State, 269 Ala. 433, 113 So.2d 669 (1959); Lee v. State, 267 Ala. 665, 104 So.2d 686 (1958), ("that he would probably be punished capitally if the law is administered"); Adams v. State, 264 Ala. 654, 89 So.2d 191 (1956), ("that the petitioner would probably be punished capitally"); Strickland v. State, 257 Ala. 585, 60 So.2d 354 (1952); Holman v. Williams, 256 Ala. 157, 53 So.2d 751 (1951), and Colvin v. State, 36 Ala.App. 104, 53 So.2d 99 (1951), ("when the judge hearing the application would sustain a verdict of guilty and the imposition of the death penalty by a jury on the evidence presented in the hearing on the application for bail" and "that he would *probably* be punished capitally if the law is administered," (emphasis in original statement)).

These two provisions (Section 16, Constitution, and Title 15, Section 195, Code) have never been given separate interpretations. The statutory provision has been referred to as complementary to the constitutional provision, being "an additional, though somewhat vague, guidepost for the judge in considering the matter of allowance or disallowance of bail," Muller v. Bridges, 280 Ala. 169, 190 So.2d 722 (1966); Colvin v. State, 36 Ala.App. 104, 53 So.2d 99 (1951). As Title 15, Section 195, of the Code is explanatory of Section 16 of the constitution, it must necessarily be read in conjunction with Section 16. In considering these provisions in the context of the evidentiary standard imposed, this court said in Ex parte Bryant, 34 Ala. 270 (1859), "This section of the Code must be so construed as to make it confirm to the 17th [now 16th] section of our bill of rights * * *." That statement is no less true in the present context dealing with the meaning of "capital offenses" and "an offense which may be punished by death." Unless Title 15, Section 195, conforms to Section 16 of the constitution, then Sections 195 and 196 become meaningless. I do not find them meaningless under the numerous decisions of this court.

The majority does not mention Title 15, Sections 195 and 196, in its opinion. If the majority maintains its present position, but attempts to consider these statutory sections, it would have two alternatives, in my opinion. One would be to declare the statutes unconstitutional and overrule the prior decisions of this court which have held that the statutes intermesh with Section 16 of the constitution. The other alternative would be for the majority to give an interpretation to the words "an offense which may be punished by death" so that such words are changed to mean something other than an offense which may be punished by death. I feel either alternative approach would be erroneous.

Because I cannot read the language in Title 15, Section 195, as creating a "classification" of crimes "for purposes other than punishment," and because it is clear that this court has always interpreted the constitutional and statutory language in question to mean exactly the same thing, I must disagree with the majority's holding in this case. I would say that the term "capital offenses" appearing in Section 16 of the Alabama Constitution of 1901 means "offenses which may be punished by death." Therefore, I must conclude that the petitioner is entitled to bail "as a matter of right" under both the constitutional and the statutory provisions.

BLOODWORTH, Justice. (Concurring in part and dissenting in part.)

I concur with the majority opinion authored by Justice Jones as to I.—that the pre-*Furman* classification of "capital cases" are still so classified, allowing bail to

be constitutionally denied for those offenses so classified—if "the proof is evident or the presumption great." As to II.A., I agree with the assumption that the testimony is corroborated if that issue needs to be reached.

I dissent from the holding in II.B.

MERRILL and MADDOX, JJ., concur.