WILLIAM I. BYRD, Circuit Judge.
The defendant, Edison Mathews, was indicted, tried, convicted of robbery, and sentenced to serve ten years in the State penitentiary by a jury in Madison County, Alabama from which he appealed.
Evidence presented by the State tended to show that on a dark night, June 5, 1975, about 10:45 P.M., two men entered an establishment known as Veterans Beverage Store on Highway 72 in Madison County, Alabama, operated by Claude Harbin. Harbin was alone. The two men drew pistols and took $60. and a wrist watch from Harbin. Harbin testified one of the men, the defendant, attempted to take the watch off Harbin’s arm forcibly, but was unable to remove it without additional help from Harbin. Mr. Harbin further stated that the defendant took the money and watch and the men fled in a blue car which the witness shot at and hit with his shotgun. At the time of the robbery the defendant had a goatee, beard, and a scar that was seen by the witness.
Edgar Blakenship testified that he drove up as the robbers fled. He and his passenger gave chase, but lost the car and could not identify the robbers.
About twenty-five minutes later the car was found parked about 2.2 miles from the scene of the crime and a short distance across a cotton patch from where the defendant resided. Harbin identified the car as the get-away car. It was impounded by the police.
Nathan Langford, the owner of the car, testified that on the day of the robbery he and the defendant, for much of the afternoon, rode around in the car, a Dodge Swinger. About 5:00 P.M., they began to drink beer, whiskey and gin, and ended up at the home of the defendant. About 7:00 P.M., Langford passed out and the defendant awoke him about 7:30 to obtain the use of the car. The defendant told Langford he would go get some girls. Langford gave the defendant the keys, fell asleep again, and awoke the next morning about 8:00. Soon after Langford awoke, he received a call from the defendant stating that he had left the keys in the car in Huntsville, and it had been stolen the night before. Langford and the defendant reported the theft to the *127 police department and the defendant told the police he had used the car on the night of the robbery, but it was stolen from him.
About two days later, Langford and the defendant went to the Madison Police Department to pick up the car. Langford identified the car as his and said the defendant had borrowed the car on the night of the robbery. The defendant at that time said nothing. The police kept the car.
Four or five days after the robbery, Harbin went to the Madison Police Department to check the progress of the investigation. Officer Smiley testified that he spread six or seven mug shots out on the counter for Harbin to inspect. Harbin identified a picture of the defendant as one of the men who robbed him. These pictures were admitted into evidence. Harbin also made an in-court identification of the defendant as the person who robbed him.
The evidence introduced by the State raised questions of fact for the jury and such evidence, if believed, was sufficient to take the case to the jury. The defendant’s motion to exclude the evidence was properly denied.
The defendant testified in his own behalf and denied that he participated in the robbery. He indicated that he did borrow the get-away car from Langford on the night of the robbery at 8:00 P.M., left about 10:00 P.M., went to the Village Gate Club in Madison, then went to Huntsville to meet a girl named Linda at the house of Marie Leamon, arriving there at 10:30 P.M. He testified that he left the keys in the car parked across the street from the house of Marie Leamon. When Linda did not appear, he went to sleep on the couch at Marie’s and was awakened the next morning about 8:00 by Larry Fletcher, who had spent the night upstairs. The defendant said he then discovered that the automobile had been stolen which he reported to Lang-ford.
The defendant was with Langford when the stolen car report was filled out and when Langford went to the police department to claim the car. On cross-examination, the defendant admitted it was “convenient” and “fortunate” that the people who stole the car in Huntsville brought it back to Madison and parked it near his aunt’s house and across a cotton patch from his home where it was found after the robbery.
Marie Leamon testified for the defendant and said the defendant came to her home about 10:15 P.M., on the night of the robbery, looking for a girl; that she did not know the girl; that the defendant was invited in and used her couch on the lower floor upon which to sleep; that she went upstairs about 10:45; that the defendant was still there at that time and was awakened by Larry Fletcher the next morning about 8:00 A.M.
Larry Fletcher testified he was upstairs at the home of Marie Leamon on the night of the robbery; that he heard the voice of the defendant when he came in, but did not see him until he awoke the defendant the next morning.
Testimony concerning the defendant’s good character was admitted and not rebutted.
All the evidence raised a jury question which was resolved against the defendant, and there was no error in the denial of the motion for a new trial.
I
Counsel for appellant contends that robbery is a capital offense and that the trial court erred in refusing to allow the appellant to strike a jury from forty-eight veniremen as required by T. 13, § 125 (90h) Code of Alabama, Recompiled 1958.
The statute provides that in the twenty-third judicial circuit, a defendant, “ . in capital felony cases shall be entitled to strike from a list of not less than forty-eight competent jurors . . . ” The trial court treated the case as non-capital and allowed a venire of thirty-one.
If this were a case of first impression the defendant would have room for argument; however, in a case from Madison County on January 20, 1976, this question was decided *128 against defendant, Fisher v. State, Ala.Cr.App., 328 So.2d 311, rehearing denied February 17, 1976, in this court and cert, den. by the Alabama Supreme Court on March 5, 1976, in Ex parte Johnny Ray Fisher, Ala., 328 So.2d 321. The same point was decided even more recently in a robbery case, Killough v. State, 57 Ala.App., 332 So.2d 736, rendered March 16, 1976, rehearing denied April 20, 1976, and cert. den. on June 11, 1976, Ex parte Michael S. Killough, Ala., 332 So.2d 739.
In Fisher, supra, Judge Bookout wrote for the court as he did a concurring opinion in Shepard v. State, 57 Ala.App. 35, 325 So.2d 551, as follows:
“Contrary to the broad language employed by the Supreme Court in Bynum, we are of the opinion that the Court was addressing itself solely to the question of bail. The purpose for a special venire in ‘capital cases’ was to give a defendant, on trial for his life, an additional safeguard, not given to those where only their liberty was at stake. At the time Act No. 532, supra, and Title 30, § 63, Code of Alabama 1940, were enacted, the only' distinction between ‘capital’ and ‘non-capital’ cases was the possible imposition of , the death penalty. Since the imposition of the death penalty has been suspended, there is no rational justification for a special venire in a case formerly classified as ‘capital’ where the maximum punishment is now the same as in a ‘non-capital’ case.
“Should the legislature ever enact a death penalty statute which meets all the constitutional tests for validity, then such special venire statutes would again become applicable, in our opinion. We do not believe the Alabama Supreme Court intended that its reasoning in the Bynum decision should be extended to require a special venire in cases where the death penalty cannot be imposed.”
This court is committed to the proposition that, since Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, (1972), abolished capital punishment, robbery is a non-capital offense and no special venire is required. The writer, a nisi prius judge and most interested in putting the matter to rest, agrees but is not sure the Supreme Court is in accord. Justice Jones writing for the divided court in Ex parte Bynum, 294 Ala. 78, 312 So.2d 52 said: “. . . The only effect of Furman was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment.” Those words are clear and in unmistakable language.
Justice Bloodworth wrote in Bynum, supra, “I concur with the majority opinion authored by Justice Jones as to 1 — that the pre-Furman classification of ‘capital cases’ are still so classified, . . . ” Chief Justice Heflin, in Bynum indicated he believed the majority was classifying non-capital cases as capital. As late as the Shepard case on January 29, 1976, Justice Jones wrote, “By quashing the writ we are not to be understood as agreeing or disagreeing with the language of the Court of Criminal Appeals’ opinion dealing with the effect of Furman v. Georgia, supra, on the defendant’s right to a special venire because this discussion was not necessary to an affirmance in view of the noncapital offense for which he was tried and convicted . . ”
By not granting certiorari in Fisher, supra, and Killough, supra, the Supreme Court may have approved the failure to grant a special venire in rape and robbery cases.
II
The defendant contends that he was entitled to be arraigned one full day before trial again based on the capital nature of the crime of robbery. Since the crime of robbery is a non-capital felony, arraignment is not required one full day before trial. The judgment entry recites:
“Comes the State of Alabama by its assistant District Attorney, Honorable Roy *129 Miller, also comes the defendant, Edison Mathews, in his own proper person and with his attorney, Honorable Wayne Morris, and being duly arraigned in open court upon and indictment on a charge of robbery, for his plea thereto says he is not guilty. Issue is joined.”
The judgment recital is sufficient. See T. 15, § 276, Code of Alabama, Recompiled 1958, and cases cited thereunder.
III
The defendant contends that the court erred in allowing the assistant district attorney to make improper argument to the jury by saying that a defendant who receives a ten year sentence will spend one-third of that sentence in the county jail. The record reflects the following:
“Mr. Miller then began the concluding portion of his closing remarks to the Jury and the following occurred:
“MR. MORRIS: Your Honor, I object, it is not the law.
“(This referring to Mr. Miller’s statement that the law is that the defendant would spend one-third of ten years in the County Jail.)
“THE COURT: It is answer in kind to an argument made by the defense. Of course, I will charge the Jury what the law is, not with regard to that subject, but it is generally something that can be argued without regard to specifics.”
“MR. Miller then concluded his closing remarks to the Jury without further objection.”
The exact argument does not appear in the record. What was purportedly said is not the law as the defense counsel pointed out to the court and jury. The trial judge’s statement seemed to satisfy the counsel since there was no exception, motion to exclude or motion for mistrial. The remarks cannot be characterized as prejudicial enough for reversal; Scott v. State, 47 Ala.App. 509, 257 So.2d 369.
There is no error in the record and the judgment is affirmed.
The foregoing opinion was prepared by Honorable WILLIAM I. BYRD, Circuit Judge, temporarily on duty on the Court of Criminal Appeals pursuant to subsection (4) of § 38, T. 13, Code of Alabama 1940, Recompiled 1958; the Court has adopted his opinion as its own.
AFFIRMED.
TYSON, HARRIS, DeCARLO, and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.