On Rehearing
The State's application for rehearing is granted. The opinion of this court in this case dated April 8, 1986, is withdrawn, and the following opinion is substituted therefor.
Appellant, Bruce Carroll, was indicted by the March 1980 term of the Lawrence County Grand Jury for a robbery that was committed on December 9, 1976. A jury found appellant guilty as charged in the indictment and he was sentenced to fifteen years in the penitentiary. In sentencing appellant, the trial court took into consideration the fact that appellant's family had paid $800 restitution to the victim of the robbery.
Appellant filed a pro se notice of appeal and counsel was appointed to represent him on appeal. The attorney submitted the cause on the record to this court and did not file a brief. This court examined the record for errors and reversed and remanded on the ground that the trial court erred in refusing to give one of appellant's requested jury instructions. Carrollv. State, 407 So.2d 173 (Ala.Crim.App. 1981). On certiorari the Alabama supreme court reversed and remanded the case to this court, holding that the trial court's oral charge substantially covered the requested written instruction. Carroll v. State,407 So.2d 177 (Ala. 1981). On remand we affirmed the judgment of conviction. Carroll v. State, 407 So.2d 179 (Ala.Cr.App. 1981).
Subsequently, appellant filed petitions for writs of error coram nobis and habeas corpus, alleging, inter alia, ineffective assistance of counsel. The trial court summarily denied the petitions. Upon appeal we remanded the case to the trial court for an evidentiary hearing. Carroll v. State,468 So.2d 185 (Ala.Cr.App. 1984). After a hearing, the trial court again denied both petitions. On return to remand this court affirmed the denial of the petition for writ of habeas corpus and reversed the judgment of the trial court denying the petition for writ of error coram nobis, holding that defense counsel's failure to file a brief on direct appeal fell below the standard of competency expected and required of counsel and constituted ineffective assistance. Carroll v. State,468 So.2d 186 (Ala.Cr.App. *Page 325 
1985) (on return to remand). Our holding was based upon the principles enunciated in Mylar v. Alabama, 671 F.2d 1299 (11th Cir.), reh'g denied en banc, 677 F.2d 117 (1982), cert. denied,463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983), as interpreted by Cannon v. Berry, 727 F.2d 1020 (11th Cir.), reh'g denied en banc, 732 F.2d 944 (1984), and Anders v.California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In reversing, we set aside the affirmance of appellant's conviction, reported at 407 So.2d 179, and reinstated the appeal of that case. Carroll v. State, 468 So.2d at 190. We now consider this case again as a direct appeal.
The State's evidence disclosed that on the morning of December 9, 1976, Melvin Pope, Bobby Dawson, Douglas Hardin, and appellant, Bruce Carroll, met at Dawson's house in Colbert County and planned a robbery. Appellant asked Dawson if he knew where they could get some "easy money," and Dawson replied that Enis Copeland had a store and reportedly had recently sold "something" and had from $15,000 to $20,000. Dawson told appellant that he would take him to the Copeland store so he could "decide for yourself, if you want to rob him." Around noon the four men drove to Copeland's store in order to familiarize themselves with the store and the surrounding area. They then returned to Dawson's house, where Dawson loaned appellant a nickel plated .38 caliber pistol for the purpose of carrying out the robbery. It was agreed that Dawson would receive one-third of the money realized from the robbery.
Later in the day, appellant, Pope, and Hardin returned to Copeland's store, and after Pope went inside and purchased cigarettes, the trio went to an abandoned house nearby to await darkness. Dawson had previously shown the others the abandoned house, and suggested it as a place to wait. While waiting they drank "moonshine" whiskey. Appellant stated that they should kill the store owner so that there would be no witness. Hardin stated that he wanted nothing to do with killing and decided that he would not participate in the actual robbery. He remained at the abandoned house while appellant and Pope went to rob the store. Appellant threatened to shoot Hardin for refusing to participate.
Appellant and Pope drove to Copeland's store, arriving around 6:30 p.m. They entered the store and stated that they were going deer hunting the next day. Pope began gathering some food items and placing them on the counter. After some customers left, Pope started to pay for the items. When the store owner, Copeland, opened the cash register, appellant stuck the pistol in his side and threatened to blow his brains out. While appellant kept the pistol pointed at Copeland, Pope took the money from the cash register, Copeland's shirt pocket, and wallet. Copeland was then ordered to leave the store and get in the robbers' automobile. As he went out the door, he bolted into the darkness and escaped.
Appellant and Pope returned to the abandoned house and picked up Hardin. When Hardin started to get into the automobile, appellant stated, "Get in, we have robbed the son-of-a-bitch." Hardin observed checks and money on the front seat of the automobile. The checks were later thrown away. The robbers decided to split up, and Hardin got out of the automobile at Russellville with the money in a sack and spent the night in the Colonial Motel. He registered in the name of "Doug Harris." There was $813 in the sack. By prearrangement, the robbers met the following day at a residence in Hartselle, where they divided the money. Dawson did not take a share, saying he was not entitled to one since the large sum of money was not found in the store. Dawson's pistol had been lost during the course of the robbery, and appellant paid him for it.
Bobby Ruth, owner of the Colonial Motel, identified a motel registration card showing that a "Doug Harris" registered into the motel on December 9, 1976, and departed December 10, 1976. Hardin identified the signature on the card as his. *Page 326 
Hardin was the principal State witness. He testified about the events and conversations between the robbers prior to and after the robbery. He related statements made by appellant and Pope as to how the robbery was carried out.
Copeland testified that between $800 and $1,100 was taken in the robbery. He positively identified appellant as the robber with the pistol. He also positively identified Pope as a participant in the robbery.
Appellant did not testify in his own behalf. His defense consisted of an attempt to prove an alibi and to discredit the testimony of Hardin. His ex-wife testified that she and appellant went to Florida around December 3rd or 4th, and returned around the 13th, 14th or 15th of December. When questioned about the exact date on direct-examination, the following occurred:
 "Q. Do you recall when you may have left Alabama and when you may have returned, approximately?
"A. Not exactly the date.
 "Q. Do you recall if you and Bruce Carroll were in Orlando, Florida, on December 9th and 10th?
 "A. We were there the 10th, because that was my niece's birthday and I didn't get her anything."
Appellant's ex-wife was married to him on the date of the alleged crime, but thereafter was divorced from him and was married to another before and at the time of the trial.
 I
Appointed counsel on appeal has asserted only one issue, in which he contends that the prosecution of appellant was barred by the applicable statute of limitations. Appellant was indicted for, and convicted of, a robbery which occurred on December 9, 1976. The indictment was returned on March 19, 1980, approximately three years and four months after the offense occurred. Appellant contends that the controlling statute of limitations on the date of the offense was Title 15, § 221, Code of Alabama 1940 (recompiled 1958), while the State contends that the controlling statute was Title 15, § 219.
Title 15, § 219, reads:
 "There is no limitation of time within which a prosecution must be commenced for any public offense which may be punished capitally, or for murder in the second degree, manslaughter in the first degree, arson, forgery, counterfeiting, or any offense expressly punishable, under the provisions of this code, as forgery or counterfeiting."
Title 15, § 221, states: "The prosecution of all felonies, except those specified in sections 219 and 220 of this title, must be commenced within three years next after the commission of the offense."
It is argued that because Furman v. Georgia, 408 U.S. 238,92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), "eliminated the death penalty from our robbery statute," Jones v. State, 50 Ala. App. 62,66, 276 So.2d 647, 650 (1973), the prosecution for the robbery in the instant case is subject to the three-year statute of limitations. In considering a similar issue in Exparte Bynum, 294 Ala. 78, 81, 312 So.2d 52, 55 (1975), our supreme court stated:
 "It is the opinion of this Court that the classification theory followed by the majority of states considering this issue [as expressed below] is sound and should be adopted. . . . The only effect of Furman was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment."
See also, Carlisle v. State, 295 Ala. 396, 326 So.2d 776 (1976) (Faulkner, J., concurring specially). Even though the Court inBynum was concerned with the granting of bail in cases classified as capital, and we are concerned here with the application of the statute of limitations in such cases, we find Bynum persuasive in resolving the issue confronting us. We see no material distinction, in reference to this issue, between Bynum and the instant case. We therefore conclude that the decision in Furman did not change the classification of *Page 327 
capital offenses in Alabama for the purpose of the application of the statute of limitations. Contra, Reino v. State,352 So.2d 853 (Fla. 1977). We find that the applicable statute to be applied in this case is Title 15, § 219. Hence there was no limitation of time within which the prosecution of the instant case could be commenced. The prosecution was timely.
 II
Appellant has filed a pro se brief in which he raises six issues. He challenges the sufficiency of the evidence to support the verdict of the jury. We find, after reviewing the record, that the trial court correctly overruled appellant's motions to exclude the State's evidence.
In Jackson v. State [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App. 1985), we stated:
 "In deciding whether or not there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. . . . Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence establishes a prima facie case. . . . The action of the trial court in denying a motion for acquittal, in denying a motion to exclude the evidence . . . must be reviewed by determining whether or not there exists legal evidence before the jury, at the time the motions are made, from which the jury by fair inference could find the defendant guilty. . . . A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." (Citations omitted.)
We find that there was sufficient legal evidence presented by the State to allow the jury to conclude beyond a reasonable doubt that appellant was guilty of the crime charged, i.e., robbery. The evidence of guilt was strong, and appellant's evidence of an alibi was unconvincing.
 III
Appellant contends that he received ineffective assistance of counsel at trial. We have carefully reviewed the transcript of appellant's trial, under the standards adopted in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), and find that counsel's performance fully measured up to the requirements necessary to make the adversarial testing process work in this case. We find no errors that were prejudicial to appellant. We find no errors by counsel which could have with reasonable probability caused the result of the proceedings to be different. We find nothing in the record to undermine our confidence that the trial produced a just result. Appellant was represented by two able, retained counsel, and the record reflects that they did their best with a difficult case.
Appellant appears to express dissatisfaction with his counsel on this appeal. We note that one of appellant's trial counsel was from Decatur and one was from Moulton, where the case was tried. They continued to represent him through the sentencing proceedings, at which time the trial court made it known to appellant that he could appeal within the prescribed time. About five days thereafter, appellant filed a pro se notice of appeal, an affidavit of indigency, and a request for a free transcript and appointment of an attorney to represent him on appeal. The trial court ordered a free transcript and appointed his previously employed Moulton attorney to represent him on appeal. The attorney filed no brief, and because of this, we subsequently set aside the affirmance of appellant's conviction and reinstated the appeal. Carroll v. State, 468 So.2d at 190. Because appellant has expressed some dissatisfaction with his counsel on this appeal now before this court, we have examined appellate counsel's performance herein, and we find that he has fully measured up *Page 328 
to the required professional standards and has done his best in handling this appeal.
 IV
We have carefully examined the remaining issues raised by appellant in his pro se brief, and we find no merit in them.
In addition to examining each issue raised by appellant, we have searched the record for errors prejudicial to appellant's substantial rights and have found none. The circuit court's judgment of conviction is, therefore, due to be affirmed.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All Judges concur.