Appellant, Steven Wayne Chamblee, was convicted of rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975, and was sentenced to 99 years' imprisonment.[1] He appeals, raising three issues.
The state's evidence disclosed that appellant and two companions, Frank David Kirby[2] and Billy Joe Kirby,[3] forcibly abducted an 18-year-old female from a public parking lot in Birmingham on January 23, 1981, and for approximately 11 hours brutally assaulted, sodomized, terrorized, and gang-raped her. The facts adduced in appellant's trial were substantially identical to those recited in Kirby v. State, 500 So.2d 79 (Ala.Cr.App. 1986). Appellant did not testify at any stage of his trial. His defense consists mainly of efforts to discredit his identification, by the victim, as one of the perpetrators of the crimes.
 I
Appellant first contends that the trial court committed reversible error in denying his motion to dismiss the indictment against him for rape in the first degree on the ground that prosecution for the crime was barred by the statute of limitations. We addressed this exact issue in Kirby v.State, 500 So.2d at 80, and ruled that there was no period of limitations for prosecution for the offense of rape. We adhere to that ruling. See also Ex parte Beverly, 497 So.2d 519 (Ala. 1986); Ex parte Bynum, 294 Ala. 78, 312 So.2d 52 (1975);Carroll v. State, 492 So.2d 323 (Ala.Cr.App. 1986); Ala. Code (1975), § 15-3-5. There was no limitation of time within which the prosecution of the instant case had to be commenced. Hence, the prosecution was timely.
 II
Appellant next contends that the court erred to reversal in overruling his objection to the in-court identification of appellant by the prosecutrix. Shortly after the commission of the crimes and prior to trial, the prosecutrix was hypnotized in an effort to enhance her memory of the details of the crimes and her identification of her attackers. Appellant argues that the hypnotic techniques used, which he alleges were unduly suggestive and confabulation prone, rendered the prosecutrix's in-court identification so unreliable that it should not have been admitted into evidence. The key issue at trial was identification. In fact, the case against appellant rested squarely on the identification by the prosecutrix.
We were first confronted with the question of admissibility of hypnotically induced recollections in Prewitt v. State,460 So.2d 296 (Ala.Cr.App. 1984), and, finding it unnecessary to address the question in resolving the issues raised on appeal, we declined to rule on the admissibility of such evidence at that time. However, in Prewitt, we pointed out the conflicting authorities on the subject, as well as the recognized shortcomings of hypnotically induced recollection. Id. at 302-04 (and cases cited *Page 175 
therein). For instance, we pointed out that some jurisdictions have concluded that such evidence is generally admissible, with reliability disputes affecting only its weight and credibility; while others have decided that such evidence and any other related evidence from the same witness is generally inadmissible due to the unproven reliability of recall induced through hypnosis. We also pointed out that other jurisdictions have adopted positions falling between these two extremes. We concluded, however, that the rule in Frye v. United States,293 F. 1013 (D.C. Cir. 1923), for safeguarding against admission into evidence of facts gleaned from an unreliable scientific test (the so-called Frye test), was applicable to hypnotically induced recollection. 460 So.2d at 302. For a discussion of the application of the Frye standards in various cases in Alabama, see Handley v. State, 515 So.2d 121 (Ala.Cr.App. 1987). For a recent well written article of the effect of hypnosis on the admission of evidence, see Note, "EVIDENCE — The Defendant's Right to Testify After Hypnosis," 18 Cumb.L.Rev.
459 (1988).
We stated in Prewitt that the "emerging trend appears to be a rule which prohibits the admission of hypnotically induced recollections (at least until such time as they are proven to be in compliance with the Frye test), but permits pre-hypnosis evidence from that same witness on the same subject," provided the proponent "proves, to the satisfaction of the trial court, the reliability of such evidence." 460 So.2d at 304. We acknowledged in Prewitt the efficacy of hypnosis as an investigatory tool, but cautioned those who use it to properly document pre-hypnosis evidence to ensure its admissibility in appropriate cases, to refute claims that it is somehow tainted by hypnosis, and to take every possible precaution to assure its reliability. Id. "[H]ypnosis has proven to be a useful and apparently essential investigative tool for generating leads in cases where normal police procedures have proven inadequate, although its use to confirm police suspicions, or prepare a witness for trial is more dubious and is not to be encouraged."State v. Hughes, 59 N.Y.2d 523, 466 N.Y.S.2d 255, 266,453 N.E.2d 484, 495 (1983). For a discussion of suggested safeguards, see Pearson v. State, 441 N.E.2d 468 (Ind. 1982);House v. State, 445 So.2d 815 (Miss. 1984); State v. Hurd,86 N.J. 525, 432 A.2d 86 (1981).
Subsequently, in Adams v. State, 484 So.2d 1160 (Ala.Cr.App. 1986), we held that a psychologist's opinion concerning the mental state of the accused, which was based upon statements of the accused made while in hypnosis, was inadmissible as a matter of law. We held that hypnosis had not attained sufficient acceptance in the field of forensic science to satisfy the reliability requirements of the Frye test. Id. at 1164. But see Note, supra, discussing Rock v. Arkansas, 483 U.S. ___, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), which concerns the application of the Frye test to a defendant's testimony.
In Johnson v. State, 500 So.2d 69 (Ala.Cr.App. 1986), we followed the "emerging" rule mentioned in Prewitt, permitting prehypnosis testimony and treating the suggestive nature of hypnosis like any other impermissibly suggestive pre-trial identification procedure which might taint other evidence. We held in Johnson that the state's use of hypnosis to strengthen the victim's recollection of her assailant was not so impermissibly suggestive as to create a substantial risk of misidentification where the victim had the opportunity to view her assailant in a well lighted room, stated at trial that there was no question in her mind that it was the defendant who shot her, and had provided the police with a good description of her attacker before hypnosis. In reaching our decision inJohnson, we applied the rule of determining the reliability of identification testimony set out in Jackson v. State,414 So.2d 1014, 1017 (Ala.Cr.App. 1982), as follows:
 "Reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98 [97 S.Ct. 2243, 53 L.Ed.2d 140]. . . (1977); Williamson v. State, 384 So.2d 1224 (Ala.Cr.App. 1980). In assessing the reliability of the identification, the effect of suggestive procedures in the pre-trial confrontation and identification must be weighed against the indicators of the ability of the witness to make an *Page 176 
accurate identification. The factors in assessing the witness's ability to accurately identify include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401] . . . (1972); Manson v. Brathwaite, supra. These factors must be weighed in their totality and then balanced against the possible suggestiveness of the pre-trial identification procedures to determine the admissibility of the identification. Manson v. Brathwaite, supra. The totality of the circumstances must be examined. Stovall v. Denno, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] . . . (1967)."
We are not concerned, in the instant case, with the admission of hypnotically induced recollections, but with the effect the hypnotic session may have had on the reliability of the victim's identification of appellant. The crimes were committed on or about January 24, 1981. The hypnotic session took place on February 10, 1981. Prior to the hypnosis session, the victim gave police a detailed description of appellant and his two companions, as well as a description of their vehicle. She described appellant as a white male; 23 years old; 6 feet, 1 inch in height; slim build; wearing medium-blue blue jeans, brown leather steel-toe work boots with worn left toe, flannel shirt; and armed with a large pearl-handled pocket knife. She further stated that he had wavy, light brown or dirty blond, shoulder-length, straggly hair; thin face; unusual shaped mouth and nose; and a mole on his penis. She also told the police that his companions called him "Steve." Composite sketches of the assailant were prepared from descriptions furnished by the victim. The only new information obtained from the victim as a result of the hypnotic session was that the shirt worn by appellant was a brown, two-piece type shirt and that the knob was missing from the door lock on the truck. While the hypnotic procedures followed were criticized by appellant's expert witness, he would not go so far as to state that the procedures used were such that they would have impeached the reliability of the results. He stated that he would have conducted the session in less suggestive ways. Our review of the transcript of the hypnotic session leads us to the conclusions that the session was not unduly suggestive and did not encourage confabulation, as contended by appellant. In fact, it did not provide any material changes in the prior descriptions and probably had little or no effect upon the witness.
Approximately three and one-half years after the hypnotic session, the victim identified appellant in a police lineup and, subsequently, in court. In assessing the victim's ability to accurately identify appellant, we make the following observations: The victim was held captive by appellant for approximately 11 hours, and part of that time was in daylight; during that time she was able to carefully observe his appearance, as well as that of his companions; the descriptions she furnished the officers, her attitude and demeanor during the investigation, and her testimony at trial demonstrate a high degree of attention to her surroundings during the ordeal and, also, reflect certainty and accuracy on her part; she was able to lead the officers to the scene where part of the attacks occurred; when she first observed appellant in a police lineup, she immediately, without hesitation, picked him out and said, "That's him, that's him, that's him"; and she did not waver or hesitate in her identification at trial. Weighing these factors in their totality and balancing them against the possible suggestiveness and effects of the hypnotic session, we conclude that there was no substantial likelihood of misidentification. The record before us indicates that the victim's identification at the police lineup, as well as in court, resulted entirely from her contact with appellant rather than from anything that occurred during hypnosis. The admission of the in-court identification was proper.
 III
Appellant contends that he was denied his constitutional right to confront the witnesses *Page 177 
against him by the admission of the hypnotically-enhanced testimony of the prosecutrix. He argues, in effect, that the witness was given post-hypnotic suggestions during hypnosis which so hardened her memory or recollection as to effectively deny him his right of cross-examination or confrontation. He contends that her testimony was the product of hypnotic influence and should not have been admitted. This issue is one of first impression in this state.
The purpose of hypnosis in criminal investigations is to improve recall without distorting it; however, it has the potential for suggestibility, confabulation, hardening of memory, and the attendant danger of misidentification. It has been held that under some circumstances, hypnosis may render a witness so positive, so certain, that effective cross-examination is impossible. Wicker v. McCotter,783 F.2d 487 (5th Cir.), cert. denied, 478 U.S. 1010, 106 S.Ct. 3310,92 L.Ed.2d 723 (1986).
However, the fact that a witness has been hypnotized before testifying does not per se require disqualification. Harker v.Maryland, 800 F.2d 437 (4th Cir. 1986); Wicker v. McCotter, supra; Clay v. Vose, 771 F.2d 1 (1st Cir. 1985), cert. denied,475 U.S. 1022, 106 S.Ct. 1212, 89 L.Ed.2d 324 (1986); UnitedStates v. Valdez, 722 F.2d 1196 (5th Cir. 1984). To formulate such a per se rule would foreclose whatever investigative benefits may be derived from the responsible use of hypnosis. In considering hypnotically enhanced testimony, a court must conduct a balanced inquiry to determine if the testimony had a basis that was independent of the dangers associated with hypnosis. The inquiry should determine whether the witness's memory and ability to testify from it were distorted by the earlier hypnosis. McQueen v. Garrison, 814 F.2d 951 (4th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 332,98 L.Ed.2d 359 (1987); Harker v. State, supra. The admissibility of such testimony is to be evaluated on a case-by-case basis, and the probative value of the testimony is to be weighed against its possible prejudicial effect. Wicker v. McCotter.
Appellant's Sixth Amendment right to confrontation was not violated in any conventional sense. The prosecutrix testified and was cross-examined extensively about every detail and circumstance of the crimes, including the identification of appellant. The jury was aware of the hypnotic session, heard the testimony of expert witnesses from both sides on the subject, and was in a position to fairly evaluate the effect of the hypnotic session on the testimony of the witness. Suggestibility and memory hardening are not unique to hypnosis; they are potential problems whenever an eyewitness makes an identification of any type. We find in the case sub judice that the hypnotic session did not impair defense counsel's ability to cross-examine the victim, because the manner in which she testified, detailing the facts and circumstances surrounding the crimes, including the identification of appellant, indicates that her recollection and judgment were unimpaired by the hypnosis. Appellant, accordingly, suffered no violation of his Sixth Amendment right to confrontation.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] It appears from the record that this is the second trial of this case; however, the record does not disclose the result of the first trial or the reason for retrial.
[2] Frank David Kirby was convicted of rape in the first degree and was sentenced to life imprisonment. His case was affirmed on appeal, and his petition for writ of certiorari to the Alabama Supreme Court was denied. Kirby v. State, 500 So.2d 79
(Ala.cr.App.), cert. denied, 500 So.2d 79 (Ala. 1986).
[3] Billy Joe Kirby pleaded guilty, on April 5, 1986, to rape in the first degree and receiving stolen property in an unrelated case and was sentenced to 25 years' and 10 years' imprisonment, respectively, the sentences to run concurrently. No appeal was taken.